IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 1, 2006

IN RE GIORGIANNA H., STUART H., SABRINA H., SAVANNAH H., VICTORIA H.,
BENJAMIN H., & SARAHANNA H.

Appeal from the Circuit Court for Perry County
No. 3358    Robert E. Lee Davies, Judge

No. M2005-01697-COA-R3-PT- March 21, 2006

This appeal involves the parental rights of the biological parents of seven minor children. After the children had been removed from their biological parents' custody for approximately one year, the Tennessee Department of Children's Services filed a petition in the Circuit Court for Perry County seeking to terminate the parental rights of the biological parents. The trial court conducted a bench trial and then entered an order terminating the biological parents' parental rights because the conditions that caused the children to be removed from the parents' custody continued to persist and because the parents had committed severe child abuse. Both parents appealed. We have determined that the record contains substantial and material evidence supporting the trial court's conclusions that the biological parents' conduct provides substantive grounds for terminating their parental rights and that the termination of the biological parents' parental rights is in the children's best interests.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J., joined. WILLIAM B. CAIN, J., filed a separate concurring opinion.

B. Kyle Sanders, Dickson, Tennessee, for the appellant, Mary Ellen H.

Patricia J. Wilsdorf, Centerville, Tennessee, for the appellant, David H.

Paul G. Summers, Attorney General and Reporter, and Lauren S. Lamberth, Assistant Attorney General, for the Tennessee Department of Children's Services.

**OPINION**

**I.**

In April 1998, David H. and Mary Ellen H. were living in Greenwood, South Carolina with their six children whose ages ranged from eleven years old to two months old. The South Carolina Department of Social Services took all the children into emergency protective custody because Victoria H., then two months old, had been hospitalized for failing to thrive and because the home

was dirty and unsafe for minor children. The six children remained in foster care until November 1998, when the family court returned them to their parents.[1]

The parties' seventh child, Benjamin H., was born in September 1999. Soon thereafter, the South Carolina Department of Social Services received a report that Benjamin H. was being neglected, but by the time the South Carolina authorities followed up on the report, David H., Mary Ellen H., and their seven children left the state and moved to Murfreesboro, Tennessee. The South Carolina authorities alerted the Tennessee Department of Children's Services (Department) to these events, and in February 2000, the Department filed a petition in the Rutherford County Juvenile Court seeking temporary custody of the seven children. The juvenile court filed an order on February 11, 2000 determining that all seven children were dependent and neglected[2] and placing the children in the Department's custody.

The Department placed the seven children in foster homes. In November 2000, Mary Ellen H. gave birth to Sarahanna H., the parties' eighth child. Ten days later, the Rutherford County Juvenile Court, despite its continuing concerns about the parents' home, returned physical custody of all the children except the oldest, Virgillia H., to the parents.[3] However, the court also determined that the Department should retain legal custody of the children pending further hearings. In December 2000, the trial court returned legal custody of the second oldest child, Giorgianna H., to the parents. The court also directed that all the school-age children should be enrolled in public school and that the Department should determine the adequacy of the house in Perry County where the parents planned to move. On January 17, 2001, following an emergency hearing, the Rutherford County Juvenile Court again removed the children from their parents' home. Three months later, on April 19, 2001, the court returned legal and physical custody of the children to their parents.

In November 2002, the Department filed a petition in the Perry County Juvenile Court alleging that seven of the parties' children were dependent and neglected.[4] After the arrangements for temporary placement fell through, the children were placed with two different foster families. Giorgianna H. and Stuart H. were placed with one family, and Sabrina H., Savannah H., Victoria H.,

---

[1] The decision to return the children to their parents came with several conditions, including (1) the parents' agreement to be psychologically evaluated and to follow the recommendations for treatment and counseling, (2) David H.'s assessment for substance abuse and his agreement to comply with treatment recommendations, and (3) the parents' agreement to enroll their school-age children in school.

[2] The juvenile court found that the parties' youngest child was failing to thrive and that the remaining six children were in danger of failing to thrive. The court also observed that the parents and their seven children had been living in a single hotel room and that the parents were making no efforts to educate their school-age children.

[3] The court understood that David H.'s brother planned to seek custody of Virgillia H. and, therefore, decided that she should remain in the Department's custody pending the filing and disposition of the custody petition.

[4] The Department alleged (1) that David H. had a severe drinking problem, (2) that both parents were neglecting the children's education, (3) that the parents used severe corporal punishment, and (4) that there had been violent confrontations between the parents with the children present.

Benjamin H., and Sarahanna H. were placed with another family.[5] The Perry County Juvenile Court found the children to be dependent and neglected in July 2003, and the parents perfected a de novo appeal to the Circuit Court for Perry County.

On January 5, 2004, before the Circuit Court for Perry County could conduct the de novo trial on its dependent and neglect petition, the Department filed a petition in the Circuit Court for Perry County to terminate David H.'s and Mary Ellen H.'s parental rights regarding their seven younger children.[6] The Department sought termination on the grounds of abandonment, persistence of conditions, and severe child abuse. Approximately one month later, the Circuit Court for Perry County conducted a trial on the dependent and neglect petition and, on September 20, 2004, filed an order concluding that the parents' seven younger children were dependent and neglected.[7] The parents appealed the September 20, 2004 dependency and neglect order in a separate appeal.[8]

On October 5, 2004, within weeks after entering its order in the dependent and neglect proceeding, the Circuit Court for Perry County conducted a trial on the Department's termination petition. The Department's case relied heavily on the testimony and exhibits introduced during the dependent and neglect trial in February 2004.[9] Over the parents' objections, the trial court permitted the Department to introduce the transcript of the dependent and neglect trial and certified copies of the exhibits that had been introduced at that trial. In addition to this evidence, the Department presented eight witnesses to support its termination petition. In addition to three of the children,[10] the Department called a family education specialist who had worked with the parents, the therapist who had worked with Sabrina H. and Savannah H., two of the Department's case managers, and one of the foster parents who had been caring for five of the children since February 2003.

---

[5]The Department had retained custody of Virgillia H.

[6]By this time, the parents' oldest child, Virgillia H., was eighteen years old.

[7]The September 20, 2004 order is based, in part, upon the following findings: (1) that David H. has a severe drinking problem; (2) that all the children were educationally deprived; (3) that the parents engaged in constant physical and verbal altercations in the presence of the children; (4) that David H. used inappropriately severe forms of corporal punishment; (5) that the parents had engaged in sexual acts in the presence of the children; and (6) that both parents committed severe child abuse. While the trial court entered an identical order on March 12, 2004, the record contains no explanation for the entry of the second order on September 20, 2004. For the purpose of this appeal, we will consider the September 20, 2004 order to be the final order.

[8]In an opinion released contemporaneously with this opinion, this court has vacated the September 20, 2004 order finding the parties' seven younger children to be dependent and neglected because the parents were not provided counsel during that proceeding. *State Dep't of Children's Servs. v. David H.*, No. M2004-01043-COA-R3-JV, ___ WL ___ (Tenn. Ct. App. Mar. 21, 2006).

[9]The Department's attorney wrote the parents' attorneys approximately six weeks before the hearing on the termination petition informing them that the Department intended to present the transcript of the February 11-12, 2004 hearing as evidence in the upcoming trial. The attorney also identified the persons whose testimony would be used and the page numbers on which this testimony could be found.

[10]The three children who testified at the hearing were Giorgianna H., who was then sixteen years old, Sabrina H., who was ten, and Savannah H., who was seven.

-3-

The trial court filed a memorandum opinion on February 14, 2005 finding that the Department had presented clear and convincing evidence supporting its claims that the parents' parental rights should be terminated under Tenn. Code Ann. § 36-1-113(g)(3)(A) (persistence of conditions) and Tenn. Code Ann. § 36-1-113(g)(4) (severe child abuse).[11] The trial court also concluded that terminating the parental rights of David H. and Mary Ellen H. would be in their children's best interests.[12]

The trial court entered a final order on May 19, 2005, which differed from the court's memorandum opinion in two ways. First, it reflected that the termination proceeding involved seven, rather than nine, children. Second, it found that David H.'s and Mary Ellen H.'s parental rights should be terminated for abandonment under Tenn. Code Ann. §§ 36-1-102(1)(A)(ii), -113(g)(1) even though it had not addressed this ground in its memorandum opinion. Like the memorandum opinion, the final order also concluded that David H.'s and Mary Ellen H.'s parental rights should be terminated under Tenn. Code Ann. §§ 36-1-113(g)(3)(A), -113(g)(4) and that terminating their parental rights would be in the children's best interests. Both David H. and Mary Ellen H. have appealed.

## II.
### THE STANDARD OF REVIEW

A biological parent's right[13] to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions.[14] *Troxel v. Granville*, 530 U.S. 57, 65, 120 S. Ct. 2054, 2059-60 (2000); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993); *Ray v. Ray*, 83 S.W.3d 726, 731 (Tenn. Ct. App. 2001). While this right is fundamental and superior to the claims of other persons and the government, it is not absolute. *State v. C.H.K.*, 154 S.W.3d 586, 589 (Tenn. Ct. App. 2004). It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination. *Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002); *In re S.M.*, 149 S.W.3d 632, 638 (Tenn. Ct. App. 2004); *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004).

---

[11]The trial court specifically disclaimed that its decision was based on any of the evidence contained in the transcript or exhibits filed during the February 2004 dependent and neglect proceeding. The court stated that "[b]ecause of objections from the . . . [parents], the Court has not considered any of the evidence from the transcript of the prior dependent and neglected hearing as a basis for its ruling in this case."

[12]The memorandum opinion erroneously states that the proceeding involved nine children. In fact, David H. and Mary Ellen H. had only eight children, and this proceeding involved only seven of them.

[13]This right exists notwithstanding the marital status of the child's biological parents where a biological parent has established or is attempting to establish a relationship with the child. *Lehr v. Robertson*, 463 U.S. 248, 262, 103 S. Ct. 2985, 2993-94 (1983); *In re D.A.H.*, 142 S.W.3d 267, 274 (Tenn. 2004); *Jones v. Garrett*, 92 S.W.3d 835, 840 (Tenn. 2002); *In re Swanson*, 2 S.W.3d 180, 188 n.12 (Tenn. 1999). The right also extends to adoptive parents. *Simmons v. Simmons*, 900 S.W.2d 682, 684 (Tenn. 1995).

[14]U.S. Const. amend. XIV, § 1; Tenn. Const. art. I, § 8.

Termination proceedings in Tennessee are governed by statute. Parties who have standing to seek the termination of a biological parent's parental rights must prove two things. First, they must prove the existence of at least one of the statutory grounds for termination.[15] Tenn. Code Ann. § 36-1-113(c)(1); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *Jones v. Garrett*, 92 S.W.3d at 838. Second, they must prove that terminating the parent's parental rights is in the child's best interests.[16] Tenn. Code Ann. § 36-1-113(c)(2); *In re A.W.*, 114 S.W.3d 541, 545 (Tenn. Ct. App. 2003); *In re C.W.W.*, 37 S.W.3d 467, 475-76 (Tenn. Ct. App. 2000); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).

No civil action carries with it graver consequences than a petition to sever family ties irretrievably and forever. Tenn. Code Ann. § 36-1-113(i)(1); *M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S. Ct. 555, 565 (1996); *In re Knott*, 138 Tenn. 349, 355, 197 S.W. 1097, 1098 (1917); *In re D.D.K.*, No. M2003-01016-COA-R3-PT, 2003 WL 23093929, at *8 (Tenn. Ct. App. Dec. 30, 2003) (No Tenn. R. App. P. 11 application filed). Because the stakes are so profoundly high, Tenn. Code Ann. § 36-1-113(c)(1) requires persons seeking to terminate a biological parent's parental rights to prove the statutory grounds for termination by clear and convincing evidence. This heightened burden of proof minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d at 622. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, *State Dep't of Children's Servs. v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003) (No Tenn. R. App. P. 11 application filed), and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002); *In re S.M.*, 149 S.W.3d at 639; *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d at 733; *In re C.W.W.*, 37 S.W.3d at 474.

Because of the gravity of their consequences, proceedings to terminate parental rights require individualized decision making. *In re Swanson*, 2 S.W.3d at 188. Accordingly, Tenn. Code Ann. § 36-1-113(k) explicitly requires courts terminating parental rights to "enter written orders containing specific findings of fact and conclusions of law" whether they have been requested to do so or not. *In re S.M.*, 149 S.W.3d at 639; *In re M.J.B.*, 140 S.W.3d at 653-54. These specific findings of fact and conclusions of law facilitate appellate review and promote just and speedy resolution of appeals. When a lower court has failed to comply with Tenn. Code Ann. § 36-1-113(k), the appellate courts must remand the case with directions to prepare the required findings of fact and conclusions of law. *In re D.L.B.*, 118 S.W.3d at 367; *In re K.N.R.*, No. M2003-01301-COA-R3-PT, 2003 WL 22999427, at *5 (Tenn. Ct. App. Dec. 23, 2003) (No Tenn. R. App. P. 11 application filed).

---

[15] The statutory grounds for terminating parental rights are found in Tenn. Code Ann. § 36-1-113(g) (Supp. 2004).

[16] The factors to be considered in a "best interests" analysis are found in Tenn. Code Ann. § 36-1-113(i).

The heightened burden of proof mandated by Tenn. Code Ann. § 36-1-113(c)(1) requires us to adapt Tenn. R. App. P. 13(d)'s customary standard of review for cases of this sort. First, we must review the trial court's specific findings of fact de novo in accordance with Tenn. R. App. P. 13(d). Thus, each of the trial court's specific factual findings will be presumed to be correct unless the evidence preponderates otherwise. Second, we must determine whether the facts, either as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements required to terminate a biological parent's parental rights. *Jones v. Garrett*, 92 S.W.3d at 838; *In re Valentine*, 79 S.W.3d at 548-49; *In re S.M.*, 149 S.W.3d at 640; *In re M.J.B.*, 140 S.W.3d at 654.[17]

## III.
### ABANDONMENT UNDER TENN. CODE ANN. § 36-1-102(1)(A)(ii)

The trial court's May 19, 2005 order purports to terminate David H.'s and Mary Ellen H.'s parental rights based on abandonment under Tenn. Code Ann. § 36-1-102(1)(A)(ii). We are at a loss to understand how this language found its way into the court's final order. However, heeding the Tennessee Supreme Court's admonition that we should examine all grounds for termination raised in the trial court, *see In re D.L.B.*, 118 S.W.3d at 367 (noting that trial courts should address all of the alleged grounds for termination to prevent delay in rendering a final decision), we will address this ground first.

As best we can determine, the Department's original petition to terminate the parents' parental rights did not allege the abandonment grounds defined in Tenn. Code Ann. § 36-1-102(1)(A)(ii).[18] On August 23, 2004, approximately six weeks prior to trial, the Department formally notified the parents' attorneys that it was pursuing termination on only two grounds – persistence of conditions under Tenn. Code Ann. § 36-1-113(g)(3) and severe child abuse under Tenn. Code Ann. § 36-1-113(g)(4). Consistent with the Department's letter, the trial court's February 14, 2005 memorandum opinion states that the Department "has articulated two separate grounds" – persistence of conditions under Tenn. Code Ann. § 36-1-113(g)(3) and severe child abuse under Tenn. Code Ann. § 36-1-113(g)(4).

After reviewing the Department's complaint and its August 23, 2004 letter, as well as the trial court's February 14, 2005 memorandum opinion, we find that the trial court's reliance upon Tenn. Code Ann. § 36-1-102(1)(A)(ii) as a ground to terminate David H.'s and Mary Ellen H.'s parental

---

[17]These decisions draw a distinction between specific facts and the combined weight of these facts. Tenn. R. App. P. 13(d) requires us to defer to the trial court's specific findings of fact as long as they are supported by a preponderance of the evidence. However, we are the ones who must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion. The Tennessee Supreme Court used this approach in *In re Valentine* when it recognized the difference between the conclusion that a biological parent had not complied substantially with her obligations in a permanency plan and the facts relied upon by the trial court to support this conclusion. *In re Valentine*, 79 S.W.3d at 548-49; *see also Jones v. Garrett*, 92 S.W.3d at 838-39.

[18]The same attorney drafted the Department's petition and the final order. Both documents are poorly drafted and are far below the quality of the court papers that are now prepared by the Department.

rights – to the extent that the trial court actually relied upon this ground – was error.[19]  The parents were never notified that the Department was seeking to terminate their parental rights based on this ground, and the Department explicitly disclaimed that it was seeking termination on any grounds other than persistence of conditions and severe child abuse.[20]

## IV.
### PERSISTENCE OF CONDITIONS UNDER TENN. CODE ANN. § 36-1-113(g)(3)(A)

Both David H. and Mary Ellen H. take issue with the trial court's conclusion that their parental rights should be terminated because they have failed to remedy the conditions that caused the Department to remove the children from their home and because there is little likelihood that they will remedy those conditions in the near future.  While they do not deny the persistence of certain of these conditions,[21] the parents assert that termination under Tenn. Code Ann. § 36-1-113(g)(3)(A) was unwarranted because the Department failed to make reasonable efforts to reunite the family after the children were removed from the home.  We have determined that the record contains clear and convincing evidence supporting the termination of these parents' rights based on Tenn. Code Ann. § 36-1-113(g)(3)(A).

### A.

The elements of the "persistence of conditions" ground for termination of parental rights are defined in Tenn. Code Ann. § 36-1-113(g)(3)(A) as follows:

> The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:
> (i) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
> (ii) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

---

[19] It is quite probable that the inclusion of this language in the final order was a drafting error attributable to the attorney who drafted the order for the court.

[20] The Department's appellate brief likewise does not undertake to uphold the termination of parental rights in this case based on Tenn. Code Ann. § 36-1-102(1)(A)(ii).

[21] David H. and Mary Ellen H. have never conceded that they sexually abused any of their children.  However, they have not taken issue with the evidence (1) that their children were either failing to thrive or in danger of failing to thrive, (2) that their children were educationally deprived, (3) that they used inappropriately severe forms of corporal punishment, or (4) that they engaged in violent arguments in their children's presence.

(iii) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

A biological parent's parental rights cannot be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(3)(A) unless the Department presents clear and convincing evidence establishing each of the statutory elements. *In re Valentine*, 79 S.W.3d at 550.

The success of a parent's remedial efforts generally depends on the Department's assistance and support. *In re C.M.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *7 (Tenn. Ct. App. Mar. 9, 2004) (No Tenn. R. App. P. 11 application filed); *State Dep't of Children's Servs. v. Demarr*, 2003 WL 21946776, at *10. Accordingly, in the absence of aggravating circumstances, the Department is statutorily required to make reasonable efforts to reunite a family after removing children from their parents' custody. Tenn. Code Ann. § 37-1-166(a)(2), (g)(2) (2005); *In re M.E.*, No. M2003-00859-COA-R3-PT, 2004 WL 1838179, at *9 (Tenn. Ct. App. Aug. 16, 2004), *perm. app. denied* (Tenn. Nov. 8, 2004); *In re C.M.M.*, 2004 WL 438326, at * 7. Because of this obligation, the Department must not only establish each of the elements in Tenn. Code Ann. § 36-1-113(g)(3)(A), it must also establish by clear and convincing evidence that it made reasonable efforts to reunite the family and that these efforts were to no avail. *In re C.M.M.*, 2004 WL 438326, at *7 n.27, *8. [22]

While the Department's reunification efforts need not be "herculean,"[23] the Department must do more than simply provide the parents with a list of services and send them on their way. *In re C.M.M.*, 2004 WL 438326, at *7. The Department's employees must use their superior insight and training to assist the parents in addressing and completing the tasks identified in the permanency plan. *In re A.J.H.*, No. M2005-00174-COA-R3-PT, 2005 WL 3190324, at *9 (Tenn. Ct. App. Nov. 28, 2005) (No Tenn. R. App. P. 11 application filed); *In re J.L.E.*, No. M2004-02133-COA-R3-PT, 2005 WL 1541892, at *14 (Tenn. Ct. App. June 30, 2005) (No Tenn. R. App. P. 11 application filed); *In re D.D.V.*, No. M2001-02282-COA-R3-JV, 2002 WL 225891, at *8 (Tenn. Ct. App. Feb. 14, 2002) (No Tenn. R. App. P. 11 application filed).

---

[22]As a general rule, a properly prepared and appropriately detailed affidavit meeting the requirements of Tenn. Code Ann. § 37-1-166(c) (2005) is sufficient to establish the extent and reasonableness of the Department's reunification efforts. Thus, unless a parent takes issue with the adequacy of the Department's efforts, the Department need not present additional evidence regarding its efforts to reunify the family. However, if a parent takes issue with the adequacy of the Department's reunification efforts, the Department may be required to present additional evidence regarding its efforts and to make its employees and contractors involved with these efforts available for discovery or cross-examination at trial. *In re C.M.M.*, 2204 WL 438326, at *8.

[23]*State Dep't of Children's Servs. v. D.M.E.*, No. E2005-00274-COA-R3-PT, 2005 WL 3369249, at *3 (Tenn. Ct. App. Dec. 12, 2005), *perm. app. filed* (Tenn. Feb. 14, 2006); *In re A.L.B.*, No. M2004-01808-COA-R3-PT, 2005 WL 1584065, at *13 (Tenn. Ct. App. July 6, 2005) (No Tenn. R. App. P. 11 application filed); *State Dep't of Children's Servs. v. Malone*, No. 03A01-9706-JV-00224, 1998 WL 46461, at *2 (Tenn. Ct. App. Feb. 15, 1998), *perm. app. denied* (Tenn. June 8, 1998).

For the purpose of proceedings such as this one, the Department's reunification efforts are "reasonable" if the Department has exercised "reasonable care and diligence . . . to provide services related to meeting the needs of the child and the family." Tenn. Code Ann. § 37-1-166(g)(1) (2005). The reasonableness of the Department's efforts depends upon the circumstances of the particular case. The factors that courts use to determine the reasonableness of the Department's efforts include: (1) the reasons for separating the parent from his or her children, (2) the parent's physical and mental abilities, (3) the resources available to the parent, (4) the parent's efforts to remedy the conditions that required the removal of the children, (5) the resources available to the Department, (6) the duration and extent of the parent's remedial efforts, and (7) the closeness of the fit between the conditions that led to the initial removal of the children, the requirements of the permanency plan, and the Department's efforts.[24] *In re C.M.C.*, No. E2005-00328-COA-R3-PT, 2005 WL 1827855, at *9 (Tenn. Ct. App. Aug. 3, 2005) (No Tenn. R. App. P. 11 application filed); *State Dep't of Children's Servs. v. B.B.M.*, No. E2004-00491-COA-R3-PT, 2004 WL 2607769, at *6 (Tenn. Ct. App. Nov. 17, 2004) (No Tenn. R. App. P. 11 application filed); *In re C.M.M.*, 2004 WL 438326, at *7.

The Department does not have the sole obligation to remedy the conditions that required the removal of children from their parents' custody. When reunification of the family is a goal, the parents share responsibility for addressing these conditions as well. Thus, parents desiring the return of their children must also make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required the Department to remove their children from their custody. *State Dep't of Children's Servs. v. B.B.M.*, 2004 WL 2607769, at *7; *In re C.M.M.*, 2004 WL 438326, at *7; *In re R.C.V.*, No. M2001-02102-COA-R3-JV, 2002 WL 31730899, at *12 (Tenn. Ct. App. Nov. 18, 2002) (No Tenn. R. App. P. 11 application filed).

**B.**

This record contains clear and convincing evidence of approximately seven years of parental abuse and neglect. David H. and Mary Ellen H. have consistently demonstrated a lack of concern for their children's welfare, as well as an inability or disinclination to remedy the conditions that have undermined the children's well-being. Most of the same problems reported by the South Carolina Department of Social Services in 1998 still existed at the time of the hearing on the Department's termination petition in October 2004.

David H. and Mary Ellen H. still expected their older daughters to supervise and care for their younger siblings. They continued to be angry with each other and engage in violent arguments in the presence of their children. They continued to use inappropriately severe corporal punishment

---

[24] Reunification efforts directed toward matters of little consequence are not reasonable. *In re Valentine*, 79 S.W.3d at 548-49 (a permanency plan must be reasonable and must be related to remedying the conditions that led to the removal in the first place).

on their children,[25] and they continued to ignore the children's education. David H. also showed little improvement with his abuse of alcohol.

The parents do not deny the existence of these conditions in their home. However, they insist that the conditions continue to exist because the Department failed to make reasonable efforts to help them remedy them. The record does not bear out their claim. To the contrary, the record contains the testimony of Department employees and other service providers demonstrating the Department's almost continual efforts over three years to assist the parents in creating a home environment that would enable the safe reunification of the family.

The root of the parents' shortcomings is their anger toward each other, their uncertainty about the future of their marriage, and their inability to agree on a stable approach to parenting their children. In March 2001, the Department enrolled the parents in its "Home Ties" program, an intensive, in-home counseling program offered through a local mental health center, to assist the parents in addressing the fact that their children were failing to thrive. In October 2001, the Department instituted its "Family Crisis Intervention" program after Virgillia H. ran away from home. Out of this intervention came a referral for homemaker services between December 2001 and February 2002.

In addition to providing these services, the Department contracted with Family Systems Services to provide additional assistance to the parents. In 2002, the parents were enrolled in the "Parenting Wisely" program. In 2003, the Department enrolled the parents in a "Reunification Parenting" program and later in a "Solution Focus Parenting" program. The education specialist who worked with the parents during each of these programs testified that the parents were cooperative but that they could make no real progress because of their inconsistent commitment to addressing their parenting deficits and their inability to communicate with each other regarding their parenting responsibilities. The educational specialist testified that he worked with these parents much longer than he ordinarily works with parents and that the Department was generous in providing him with additional time. However, he finally concluded that he had "reached the limits of what my capabilities are in parenting education," and that he could not recommend the reunification of the family because of the parents' inability to understand and follow through with their parenting responsibilities.

Other Department employees testified that the parents never expressed or exhibited a desire to change their lives in ways that would enable them to be reunited with their children. This unfortunate pattern is evident in this record, as is the Department's repeated efforts to provide the parents the services and support that would have enabled them, with some reasonable effort on their part, to address and remedy the conditions that had originally caused the Department to remove the children from their home. Accordingly, we find that the record contains clear and convincing evidence that the Department made reasonable efforts to support and assist David H. and Mary Ellen

---

[25]Giorgianna H. testified that her mother slapped her in the face. She also testified that her father was especially harsh with Virgillia H. when she attempted to intercede during her parents' arguments and that he was abusive to Victoria H. because he did not believe that she was his child.

-10-

H. following the removal of their children, that they failed to remedy these conditions, and that there is little likelihood that they will be able to remedy these conditions at an early date. Based on these findings, we have determined that the trial court properly found that grounds existed under Tenn. Code Ann. § 36-1-113(g)(3)(A) to terminate David H.'s and Mary Ellen H.'s parental rights.

# V.
## SEVERE CHILD ABUSE UNDER TENN. CODE ANN. § 36-1-113(g)(4)

David H. and Mary Ellen H. also insist that the Department failed to present clear and convincing evidence that they committed severe child abuse. The Department insists that it presented ample evidence during the October 2004 trial to establish clearly and convincingly that both David H. and Mary Ellen H. had sexually abused several of their children. We have determined that the portions of the record that may appropriately be considered on this appeal support the Department's claim.

Before addressing the substance of this issue, we must first consider which portions of the record may be used to support terminating David H.'s and Mary Ellen H.'s rights based on Tenn. Code Ann. § 36-1-113(g)(4). We have determined that the only evidence that should be considered is the testimony actually presented during the October 2004 trial. Even though the Department relied heavily on the evidence in the transcript of the February 2004 dependent and neglect trial, we have determined that there are two compelling reasons for declining to consider this evidence. First, the trial court itself did not consider this evidence.[26] Second, in an opinion issued contemporaneously with this opinion, we have concluded that the order entered on September 20, 2004 in the dependent and neglect proceeding must be vacated because of the trial court's failure to grant David H.'s and Mary Ellen H.'s requests for appointed counsel to represent them in the dependent and neglect proceeding. It would be inappropriate to rely on the evidence adduced during the trial of the dependent and neglect proceeding now that we have determined that that proceeding was tainted by the failure to provide the parents with appointed counsel.

Even without the evidence adduced in the dependent and neglect proceeding, this record contains clear and convincing evidence that David H. and Mary Ellen H. sexually abused three of their daughters. This evidence includes the testimony of the therapist for Sabrina H. and Savannah H. who recounted the children's statements describing the grossly inappropriate sexual activities in which both David H. and Mary Ellen H. forced them and their sister, Victoria H., to participate. This evidence was corroborated by Sabrina H. and Savannah H. at trial. Even though they were understandably reluctant to recount the details of their abuse to a room full of strangers, when they were interviewed in chambers outside of their parents' presence, Savannah H. stated that she had told the therapist everything that had happened to them, and both children stated in general terms that their parents had touched them in inappropriate ways.

---

[26]The trial court stated in both its memorandum opinion and final order that its decision was not based on any of the evidence contained in the transcript of the February 2004 hearing on the Department's dependent and neglect petition.

No purpose will be served by providing a detailed account of Sabrina H.'s and Savannah H.'s descriptions of their parents' conduct. Their testimony is specific and consistent enough to discount any legitimate concern that it is the product of a child's imagination or of inappropriate coaching by the Department or its contractors. Based on the therapist's testimony regarding the children's descriptions of the conduct of their parents and the children's corroboration, we find that the trial court properly determined that David H. and Mary Ellen H. had committed severe child abuse warranting termination of their parental rights in accordance with Tenn. Code Ann. § 36-1-113(g)(4).

## VI.
### THE CHILDREN'S BEST INTERESTS

As a final matter, David H. and Mary Ellen H. argue that terminating their parental rights would not be in their children's best interests. Their argument focuses on what they perceive to be the weakness of the Department's evidence regarding the grounds for terminating their parental rights and the inadequacy of the Department's efforts to assist them in addressing the conditions that caused the children to be removed from their custody. We have determined that the record contains clear and convincing evidence supporting the trial court's conclusion that terminating David H.'s and Mary Ellen H.'s parental rights is in the best interests of their children.

### A.

The ultimate goal of every proceeding involving the care and custody of a child is to ascertain and promote the child's best interests. However, as important as these interests are, they do not dominate every phase of a termination of parental rights proceeding. The best interests of the child do not become the paramount consideration until the trial court has determined that the parent is unfit based on clear and convincing evidence of one or more of the grounds for termination listed in Tenn. Code Ann. § 36-1-113(g). Once a parent has been found to be unfit, the interests of the parent and the child diverge. While the parent's interests do not evaporate upon a finding of unfitness, *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394-95 (1982), the focus of the proceedings shifts to the best interests of the child.

While a finding of parental unfitness is a necessary prerequisite to terminating a parent's rights, a finding of unfitness does not necessarily require that the parent's rights be terminated. *White v. Moody*, 171 S.W.3d 187, 193 (Tenn. Ct. App. 2004); *In re Termination of Parental Rights to Alexander V.*, 678 N.W.2d 856, 863 (Wis. 2004). Not all parental misconduct is irredeemable. Thus, Tennessee's termination of parental rights statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interests.

The concept of the child's best interests evolved in the context of divorce proceedings and has now migrated from legal discourse into popular culture. What is best for children depends on values and norms upon which reasonable persons can differ. *White v. Moody*, 171 S.W.3d at 193; *Rideout v. Riendeau*, 761 A.2d 291, 296 n.5 (Me. 2000). Thus, critics of the best interests of the child standard often point out that its non-specificity leads to unpredictable and inconsistent outcomes. *Troxel v. Granville*, 530 U.S. at 101, 120 S. Ct. at 2079 (2000) (Kennedy, J., dissenting);

Principles of the Law of Family Dissolution 2 & n.2 (Tentative Draft No. 3 1998); Julie E. Artis, *Judging the Best Interests of the Child: Judges' Accounts of the Tender Years Doctrine*, 38 Law & Soc'y Rev. 769, 774-75 (2004).

However, others have pointed out that the courts' persistent reliance on the best interests of the child standard suggests that no more appealing formulation is likely to be offered and that it is not much less workable than other standards the law has adopted. 2 HOMER H. CLARK, JR., THE LAW OF DOMESTIC RELATIONS IN THE UNITED STATES § 20.4, at 495 (2d ed. 1987) [hereinafter THE LAW OF DOMESTIC RELATIONS]. Professor Clark, the author of one of the seminal domestic relations treatises, has observed that "few if any experienced judges and lawyers think that . . . [the child's best interests standard] goes very far toward deciding cases. That can only be done by considering the facts of the individual case against the background of factors held to be relevant in earlier cases." 2 THE LAW OF DOMESTIC RELATIONS § 20.6, at 479.

In recent years, the Tennessee General Assembly, like other state legislatures, has undertaken to codify the factors that courts should consider when called upon to ascertain a child's best interests in various circumstances. In termination of parental rights cases such as this one, the General Assembly has provided the courts with a non-exclusive list of nine factors to consider. Tenn. Code Ann. § 36-1- 113(i). Thus, ascertaining a child's best interests in a termination proceeding is a fact-intensive inquiry requiring the courts to weigh the evidence in light of the statutory factors, as well as any other relevant factors, to determine whether irrevocably severing the relationship between the parent and the child is in the child's best interests. *White v. Moody*, 171 S.W.3d at 193-94. The Department is not required to prevail on each and every statutory factor before a court may conclude that terminating parental rights is in a child's best interests. *State Dep't of Children's Servs. v. T.S.W.*, No. M2001-01735-COA-R3-CV, 2002 WL 970434, at *3 (Tenn. Ct. App. May 10, 2002) (No Tenn. R. App. P. 11 application filed).

The child's best interests must be viewed from the child's, rather than the parent's, perspective. *White v. Moody*, 171 S.W.3d at 194; *In re Hammett*, No. 245221, 2003 WL 22416515, at *2 (Mich. Ct. App. Oct. 23, 2003); *In re L.N., Jr.*, 690 N.W.2d 245, 247 (S.D. 2004); *In re Marriage of Pape*, 989 P.2d 1120, 1130 (Wash. 1999). A focus on the perspective of the child is the common theme running through the list of mandatory factors specified in Tenn. Code Ann. § 36-1-113(i). By the time the court reaches the best interests analysis, it will have already made a finding, supported by clear and convincing evidence, that the parent is unfit or poses a risk of substantial harm to the welfare of the child. Accordingly, the exclusive focus on the perspective of the child in the best interests analysis does not contravene the parent's constitutional rights.

**B.**

All adults who testified at the October 2004 trial expressed concern about the parents' conduct ever since they moved to Tennessee and the effects of this conduct on their children. It is not disputed that the children had been educationally deprived, had been subjected to severe corporal punishment, and had been physically and psychologically abused by their parents. It is likewise

undisputed that there had been a significant, positive transformation in the children since their removal from their parents' custody.

Despite over three years of intervention by the Department, David H. and Mary Ellen H. have demonstrated little ability or inclination to modify their lifestyles or to improve their parenting skills. They appear to be disinterested in many of their older children, and thus it is not likely that they will be able to effectively parent any of their children in the near future. The children who testified expressed apprehension about being returned to their parents, as well as great satisfaction with their foster placements. After carefully reviewing this record in light of the factors in Tenn. Code Ann. § 36-1-113(i), we find that there is clear and convincing evidence to support the trial court's conclusion that terminating the parental rights of David H. and Mary Ellen H. is in their children's best interests.

## VII.

The judgment terminating the parental rights of David H. and Mary Ellen H. with regard to Giorgianna H., Stuart H., Sabrina H., Savannah H., Victoria H., Benjamin H., and Sarahanna H. is affirmed, and the case is remanded to the circuit court for whatever further proceedings consistent with this opinion may be required. The costs of this appeal are taxed to the Tennessee Department of Children's Services.

_____
WILLIAM C. KOCH, JR., P.J., M.S.