# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs, October 4, 2011

## IN RE: MARIA A., RICKEY A., JR. and ANGEL A.

**Appeal from the Juvenile Court for Bradley County**
**No. J-04-118    Hon. Daniel Swafford, Judge**

---

**No. E2011-00642-COA-R3-PT-FILED-DECEMBER 12, 2011**

---

DCS filed a Petition to terminate the parental rights of the father. Following an evidentiary hearing, the Trial Court determined there were statutory grounds to terminate the father's parental rights, and that it was in the best interest of the children that his rights be terminated. The father appealed and did not question that statutory grounds existed for termination, but argued that the Department failed to make reasonable efforts to reunify the father with his children. We conclude the father failed to demonstrate that the Department did not make reasonable efforts for reunification. The evidence is clear and convincing that the Department made reasonable efforts for reunification. We affirm the Judgment of the Trial Court.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Juvenile Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Matthew C. Rogers, Athens, Tennessee, for the appellant, RA.

Robert E. Cooper, Jr., Attorney General and Reporter, and Joshua Davis Baker, Assistant Attorney General, Nashville, Tennessee, for the appellee, The Tennessee Department of Children's Services.

**OPINION**

DCS filed a Petition to Terminate Parental Rights against respondent, RA, with regard to his three children. The Petition alleged that the children's mother died in 2004, and the children were taken into custody at that time because the father was in the hospital with pneumonia. The children were returned to the father in October 2004, but DCS monitored the children for the next four years due to allegations of abuse and neglect.

The Petition alleged that in mid-2008, Maria slit her wrists after arguing with her father, and at that time DCS found the home to be filthy and without food. Further, that on December 10, 2008, the father was rushed to the hospital, unconscious, and DCS found an empty bottle of hydrocodone in the home. The children were then taken into custody, and permanency plans were developed.

The Petition alleged the father did not comply with the plans, had no job, his request for disability was denied, he had positive drug tests, and failed to go to his Tenncare appointment or counseling sessions.

The Petition alleged the parenting assessment showed the father had a personality disorder, depression, anxiety, and a dependence on benzodiazepines, and that it was unlikely that he could parent effectively without constant assistance and supervision. The father failed another drug screen on November 19, 2009, and in January 2010, was rushed to the hospital after a "mental breakdown". Finally, the Petition alleged that the children were doing well in foster care, that they loved their foster mother and wanted to stay with her, and they were finally doing well in school.

A trial on the issue was held in October 2010, with numerous witnesses and experts testifying, as well as the father, who testified at length.

Following the evidentiary hearing, the Trial Court entered an Order Terminating Parental Rights of the father, and found that DCS had made reasonable efforts to assist the father in taking care of the children, as they had been involved with the family for many years. The Court found that the children first came into state custody in 2004 after the death of their mother, because the father was in the hospital, and the children had been left in the care of an aunt with alcohol/drug issues.

The Court found that the father agreed to have the children adjudicated dependent and neglected, and permanency plans were developed. The Court found that the visitation went badly, and the father either slept or talked to the children about his problems. The Court found that the father paid no child support, and that he had tested positive for drugs on more

than one occasion.

The Court held that the ground of substantial non-compliance with the permanency plans was shown by clear and convincing evidence, as well as the ground of persistent conditions. The Court observed that the father had no income or financial stability, had made no progress regarding his medication issues, had no involvement in the children's education, and had ineffective visitation.

The Court found the foster mother loved the children and that they loved her, that they were doing well in her care, and that she wanted to adopt them. The Court also held that the ground of mental incompetence had been proven by clear and convincing evidence.

The Court concluded that termination was in the best interests of the children, because the father had made no adjustment of his circumstances such that it would be safe for the children to be with him, as he had not addressed his drug dependency, and his mental/emotional status was detrimental to the children. Further, that the children had been in custody for two years, that they needed a permanent home, and that the foster home was safe, stable, and nurturing. The court terminated the father's parental rights

The issue on appeal raised by the father, is whether the Trial Court erred in finding that reasonable efforts were made by DCS to reunify the father and the children?

The father does not challenge the Trial Court's finding that grounds existed for termination or that termination was in the children's best interests. He simply argues that DCS did not make reasonable efforts to reunify the father with his children.

For the purpose of proceedings such as this, DCS' reunification efforts are considered "reasonable" if DCS has exercised "reasonable care and diligence ... to provide services related to meeting the needs of the child and the family." *In re Giorgianna H.*, 205 S.W.3d 508, 519 (Tenn. Ct. App. 2006). We have also recognized that DCS' efforts need only be reasonable, and not "herculean". *Id*. Parents desiring the return of their children are also required to make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required DCS to remove their children from their custody. *Id.*

In this case, the proof demonstrated that DCS made reasonable efforts toward reunification, in that they established permanency plans for the father to follow, set up a parenting assessment and provided the father with transportation to and from said assessment, facilitated visitation between the father and the children, attempted to assist the father in re-establishing his Tenncare coverage so that he could obtain an alcohol and drug assessment, set up family therapy appointments for the father through Hiwassee, and tried

to maintain contact with the father by leaving correspondence at his home or giving him notes at visits when unable to reach him either by mail or phone.

The father, on the other hand, did little to comply with the permanency plans besides visit the children. He did attend the parenting assessment, but did not attempt to follow through on the recommended therapy or medicine review. The father did not obtain an alcohol and drug assessment, supposedly because he had no Tenncare coverage, but he failed to follow through with having that coverage re-established, even after the case worker went to the health department, talked to them on the father's behalf, and obtained the packet he needed to fill out. The case worker testified that there was little else she could have done to assist the father in getting his Tenncare coverage.

The father's own testimony demonstrated his circumstances and condition. His answers were often illogical, rambling, and off-subject. He made excuses for his every failure, and blamed his hospitalization on a doctor "shooting him up six times" with insulin, when the hospital records showed he suffered from a narcotic overdose. The record is clear that DCS made reasonable efforts to assist with reunification, but the father made virtually no effort.

We affirm the Judgment of the Trial Court terminating the father's parental rights and remand, with the cost of the appeal assessed to the father.

_____
HERSCHEL PICKENS FRANKS, P.J.