IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2013

**IN RE SPENCER P. ET AL.[1]**

**Appeal from the Circuit Court for Montgomery County**
**No. MCCCCVSR090699      Ross H. Hicks, Judge**

**No. M2012-01205-COA-R3-PT - Filed March 5, 2013**

Mother's and Father's parental rights to four children were terminated based on findings that they committed severe child abuse upon a sibling and that the best interests of the remaining four children (the parents' rights to the two severely abused children having been previously surrendered) required termination of their rights. Parents appealed, challenging only the best interest finding. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Dustin P. Click, Clarksville, Tennessee, for the appellant, Windie P.

Robert E. Cooper, Attorney General and Reporter, and Alexander S. Rieger, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

This case presents the unusual situation in which the parental rights of the appellants were terminated and the appellants do not challenge that grounds for termination exist. Their main argument is that termination is not in the best interest of the children.

The appellants, Ernest P. ("Father") and Windie P. ("Mother"), were the adoptive

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

parents of six children: Victoria, Greta, Samuel, Mary Sue, Tyler and Spencer. The events leading up to this appeal began when Victoria ran to a neighbor's home. Blood was oozing from her head and there were blood stains on her neck and shirt. She stated that Mother had hit her with a rolling pin. She also had marks on her arms and torso, was dirty and looked frail. Greta was also found to have marks and bruises. Both children endured deprivation of food and water for extended periods, being tied to a cot for days at a time, beatings, burns and other methods of "discipline" that can only be described as torture. Further cataloguing the multiple, varied injuries Victoria and Greta received would serve no useful purpose here.

The juvenile court found that both children were dependent and neglected and that the parents had committed severe child abuse. Mother was later convicted of facilitation of rape of a child, two counts of false imprisonment, three counts of especially aggravated kidnapping, three counts of reckless endangerment, aggravated assault, and two counts of aggravated child abuse. A jury found Father not guilty of one count of especially aggravated kidnapping and two counts of aggravated child abuse. Other counts against Father were dismissed.

The Department of Children's Services ("DCS") filed a petition on September 28, 2010, to terminate the parents' parental rights to all six children based upon the severe abuse they committed against Victoria and Greta. The parents surrendered their parental rights to Victoria and Greta.

At the hearing, both Victoria and Greta testified as to the abuse they received. They also testified that Mother involved others in their punishment. Victoria said Mother made Greta bend Victoria's fingers back until her thumb broke. Greta stated that Mother made Tyler and Spencer hit her with baseball bats and a hose and, if they refused, Mother would hit them instead. Victoria testified that Mother would hit Tyler, Samuel and Mary Sue with bats and wooden spoons. Spencer testified to being hit with a baseball bat, along with Tyler, Victoria and Greta. Tyler testified that Mother tried to make him hurt his siblings.

Dr. Lisa Piercey testified that Victoria's and Greta's injuries were consistent with their explanations. Dr. Piercey testified about injuries to Victoria's fingers and thumb, which required surgery, as well as to Victoria's ligature marks, lacerations, burn marks, and swelling from jumper cable pinches. Greta had similar injuries. She stated "that both girls were subjected to numerous and extensive episodes of severe physical abuse that posed an imminent risk of serious bodily injury or death." Dr. Janie Berryman, a psychologist, testified, based on her interviews with the children, the forensic evaluations and the medical records of Victoria and Greta, and the juvenile court record, that the children should not be returned to the parents' home.

Father testified that he did not abuse the children and that he had not witnessed any abuse. Mother exercised her right not to testify under the Fifth Amendment.

The parents called several witnesses. A DCS caseworker, Maleka Holmes, testified that Tyler, Mary Sue, Samuel and Spencer experienced only environmental neglect. The parents attacked Victoria's and Greta's credibility through the testimony of Maleka Holmes, Christina Hite, a former foster parent of the girls, and Amanda McClain, a DCS contractor, who discussed some inappropriate behavior, including theft. Dr. Janice Martin, a psychologist, testified she performed a number of tests on Mother and that Mother did not have the profile of an abuser. She recommended that the four children be returned to Mother's custody. She admitted to never having seen Mary Sue, Tyler, Samuel or Spencer. Two witnesses, Keith and Ramona Cherry, testified that they had never witnessed any abuse or signs of abuse.

The trial court terminated the parents' parental rights based on the severe abuse perpetrated against Victoria and Greta and a finding that termination was in the children's best interest. Each parent appealed.[2]

STANDARD OF REVIEW

Tennessee's termination statutes identify situations in which the state's interest in a child's welfare justifies interference with a parent's constitutional rights and termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(1)-(2); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require individualized decision making and a higher standard of proof in deciding termination cases. *See Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A ., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence

---

[2]Each parent had appointed counsel at trial. Mother's counsel filed the notice of appeal on her behalf. Father filed his notice of appeal himself. Noticing this discrepancy, on November 14, 2012, this court remanded the matter "to the trial court for a resolution of any and all questions regarding the father's representation on appeal . . . ." The trial court found that Father was no longer indigent and no longer entitled to appointed counsel. Consequently, this court's order of December 19, 2012 allowed Father to continue to proceed pro se in this appeal. The December 19 order noted that "[i]f the father fails to file a brief, the case shall be submitted for a decision on the record and briefs on file." Father never submitted a brief. We will proceed to consider the case in accordance with the December 19 order.

"establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. First, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* Next, we must determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

In this matter, Mother does not challenge the grounds for termination. Her argument is based on the best interest of the children.

ANALYSIS

Tennessee Code Annotated section 36-1-113(i) contains a non-exhaustive list of factors a trial court is required to consider in making the best interest determination:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or

-4-

guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Every factor need not be applicable for the trial court to determine it is in the best interest of the child for a parent's rights to be terminated. *See In re Audrey S*., 182 S.W.3d at 878. The best interest analysis is a fact-intensive inquiry requiring the court to consider the unique facts of the case "from the child's, rather than the parent's, perspective." *In re Giorgianna H*., 205 S.W.3d 508, 523 (Tenn. Ct. App. 2006).

The trial court found that six of these factors weighed against the parents.[3] The trial court found that it was in the best interest of the children to terminate the parental rights of the parents. We have reviewed the record and find that the trial court's conclusion is supported by clear and convincing evidence. We, therefore, concur in the trial court's decision to terminate the parents' parental rights.

Mother raises one other point at the end of her brief in the following three sentences:

[Mother] suffered irreparable harm due to the delay in bringing this petition. The Trial Court made its findings as to best interest almost four years after the Department of Children's Services removed the children from the P[...] home. For this reason the case should be reversed and custody should be returned to

---

[3]The trial court did not discuss factor number 2 because the department was relieved of making reasonable efforts in this case. The trial court found that factor 7 was irrelevant under the circumstances of this case. The trial court also found that the parents paid child support.

[Father and Mother].

The conclusory statement in the first sentence is not supported by any citation to evidence. *See* Tenn. R. App. P. 27(a)(7)(A). As to the second sentence, Mother ignores the fact that the parents moved the trial court to stay the termination proceedings until after their criminal proceedings. Thus, any delay was at her request and is not a reason to find prejudice.

Costs of appeal are assessed against DCS, due to Mother's indigency and Father's lack of participation.

_____
ANDY D. BENNETT, JUDGE