IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs October 31, 2012

# IN RE TONY W. H. ET AL.[1]

**Appeal from the Juvenile Court for Dickson County**
**No. 1111099CC      A. Andrew Jackson, Judge**

_____

**No. M2012-01526-COA-R3-PT - Filed December 12, 2012**

_____

Mother of two children appeals an order terminating her parental rights. Both children were taken into Department of Children's Services custody after they tested positive for cocaine. The trial court found several grounds for termination and determined that termination is in the children's best interests. Mother contends the trial court erred in finding clear and convincing evidence that termination of her rights is in the best interest of the children. Finding no error, we affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., and RICHARD H. DINKINS, JJ., joined.

Peggy R. Smith, White Bluff, Tennessee, for the appellant, Candace H.

Robert E. Cooper, Jr., Attorney General and Reporter, and Aaron E. Winter, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

## OPINION

### FACTUAL AND PROCEDURAL HISTORY

Tony H. ("Father") and Candace H. ("Mother") are the parents of Tony H., Jr. and Madison H. born August 11, 2004 and March 22, 2006, respectively. The children were taken into Department of Children's Services ("DCS") custody on March 17, 2011, after both children tested positive for cocaine. On September 14, 2011, the Dickson County Juvenile

---

[1] This Court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

Court entered an order adjudicating the children "dependent, neglected and severely abused." The Family Permanency Plan attached to the September 14 order included a section describing the events or conditions leading to DCS custody as follows:

> When interviewing [Mother], she stated that there was no need for a drug screen, that she would test positive for cocaine and opiates. A urine drug screen was completed and she tested positive for methadone in addition to cocaine and opiates. During the interview, [Mother] relayed that the only time cocaine was in their home was when her husband received a large load, and that he then took the cocaine to another location. . . . She denied knowing how her son would test positive for cocaine . . . [Tony H., Jr.] told a DCS worker on 03/17/2011, that he knew how to roll the "green crumbly stuff" in a cigarette. He also said that you could take a pill and pour the white stuff out, and use a straw to suck it up your nose. . . .

On November 9, 2011, DCS filed a petition to terminate the parental rights of both parents.[2] On June 1, 2012, the juvenile court held a hearing on the petition at which the DCS caseworker, Father, and Mother testified. The court entered an order terminating Mother's parental rights on June 20, 2012. Specifically, the court found the following grounds for termination by clear and convincing evidence: severe abuse, under Tenn. Code Ann. § 36-1-113(g)(4), substantial noncompliance with the permanency plan, under Tenn. Code Ann. § 36-1-113(g)(2), and persistence of conditions, under Tenn. Code Ann. § 36-1-113(g)(3). The court found, by clear and convincing evidence, that termination was in the best interests of the children. Mother appeals.

STANDARD OF REVIEW

A parent's right to the care, custody, and control of their child is a recognized liberty interest protected by the federal and state constitutions. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Consequently, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

Tennessee's termination statutes identify situations in which the state's interest in a child's welfare justifies interference with a parent's constitutional rights. *In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of at least one of the statutory grounds for termination and that

---

[2] This appeal only concerns Mother.

termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(1); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require individualized decision making and a higher standard of proof in deciding termination cases. *See Santosky*, 455 U.S. at 769; *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. First, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* Next, we must determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

ANALYSIS

Mother contends the trial court erred in holding that termination of her parental rights was in the best interests of the children. Mother does not argue that the trial court erred in finding grounds for termination of her parental rights, thus we begin our analysis by examining the trial court's conclusions regarding the children's best interests.[3]

---

[3] Although not raised as an issue on appeal, Mother briefly asserts that DCS failed to make reasonable efforts to assist her in complying with the requirements of the permanency plan. Tennessee Code Annotated § 37-1-166(g)(4)(A) provides that DCS is not required to make reasonable efforts to reunify a family if a court determines that a parent has subjected her children to "aggravated circumstances as defined in [Tenn. Code Ann.] § 36-1-102." "Aggravated circumstances" include, among other things, "severe child abuse." Tenn. Code Ann. § 36-1-102(9). In the September 14, 2011 Order, the juvenile court found the children were severely abused because they tested positive for cocaine. On June 20, 2012, the court terminated Mother's parental rights upon a finding of severe child abuse. In light of the court's holding that Mother had committed severe child abuse, DCS was excused from making reasonable efforts to reunite the
(continued...)

Tennessee Code Annotated section 36-1-113(i) contains a non-exhaustive list of factors a trial court is required to consider in making the best interest determination:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

---

[3](...continued)
family. *See* Tenn. Code Ann. § 37-1-166(g)(4)(A).

Every factor need not be applicable for the trial court to determine it is in the best interest of the child for a parent's rights to be terminated. *See In re Audrey S.*, 182 S.W.3d at 878. The best interest analysis is a fact-intensive inquiry requiring the court to consider the unique facts of the case "from the child's, rather than the parent's, perspective." *In re Giorgianna H.*, 205 S.W.3d 508, 523 (Tenn. Ct. App. 2006).

The trial court made the following findings with respect to the children's best interests:

> The Court concludes that termination of the parental rights of [Father] and [Mother] is in the Children's best interest. [Father] and [Mother] have not made any adjustment of circumstance, conduct, or conditions. Tenn. Code Ann. 36-1-113(i)(1).
>
> The Parents have failed to effect a lasting adjustment after reasonable efforts by available social agencies for such duration of time that lasting adjustment does not reasonably appear possible. Court [sic] finds that the likelihood of these conditions changing anytime soon is slim, if at all, and that it is in the best interest of these Children that the parental rights are terminated.
>
> Thus, the Court concludes that several factors under 36-1-113(i) are present. Accordingly, termination is clearly in the child's best interest.

We agree with the trial court that in the fifteen months since the children entered DCS custody, Mother has failed to make an adjustment of circumstances in order to make it safe for the children to be returned to her. *See* Tenn. Code Ann. § 36-1-113(i)(1). Despite the efforts of DCS to assist Mother in participating in a rehabilitation program at a free or low-cost alcohol and drug treatment facility, Mother continues to struggle with drug abuse. The record shows that Mother tested positive for a variety of drugs on nine separate occasions between May 18, 2011 and March 16, 2012.[4] In addition, Mother has failed to establish a

---

[4] DCS caseworker, Arlinda Baxter testified regarding Mother's drug abuse as follows:

Q: And how many of her tests were actually positive?

A: On 5/18/11, she was positive for opiates. On 6/23/11, she was positive for meth. On 6/23/11, she was positive for cocaine. On 8/26/11, she was positive for methamphetamines and cocaine. On 9/20/11, [she] was positive for cocaine and meth. On 9/22/11, she was positive for meth and cocaine.
On 10/31/11, [she] was positive for amphetamines, cocaine, benzos, and meth. On

(continued...)

safe home where she could care for the children in a stable manner. *See* Tenn. Code Ann. § 36-1-113(i)(7). At the time of the hearing, Mother was incarcerated,[5] and when asked where she had been living prior to going to jail, she stated: "I was living with my husband and his mother before he went to jail, and then after that, I moved, and I was living with my grandmother." When asked about her goals following incarceration, Mother testified as follows:

> A: I am trying to get into rehab. Before I got arrested, I had got accepted into Mending Hearts. Which [the DCS caseworker] gave me the papers for it, but I got arrested before I got in there. And I'm trying to get into rehab and just get my whole life together. I already have - - me and my sister-in-law is renting a place in Charlotte. I already have a place to live. . . .

The record shows that Mother has made no discernable progress toward creating a healthy and safe environment in which to raise her children. The evidence clearly and convincingly supports the trial court's determination that termination of Mother's parental rights is in the best interest of the children.

### CONCLUSION

The judgment terminating the parental rights of Mother with regard to Tony H., Jr. and Madison H. is affirmed. Costs of appeal are assessed against Mother.

_____
ANDY D. BENNETT, JUDGE

---

[4](...continued)
12/21/11, she was positive for oxycodone. That same day, she provided me a copy of her hair follicle that she completed, and that showed positive for cocaine and benzos, the metabolites.

. . .

A: Oh, I wasn't done. On 2/15/12, she tested positive for benzos and barbiturates. On 3/16/12, she tested positive for amphetamines, benzos, meth, and opiates. And that was the last time I drug-tested her.

[5] Mother testified she was incarcerated for "promotion to manufacture and violation of the promotion charge." She testified that she had not been sentenced for these charges.