IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 20, 2013

### IN RE BRANDON T. ET AL.[1]

**Appeal from the Juvenile Court for Sumner County**
**No. 2007-JV-1470     Barry R. Brown, Judge**

_____

**No. M2012-02055-COA-R3-PT - Filed April 17, 2013**

_____

Father appeals the termination of his parental rights to his four biological children. The trial court terminated his parental rights on the grounds of abandonment by failure to provide a suitable home, substantial noncompliance with the permanency plan, and persistence of conditions. Finding that at least two of the grounds for termination are supported by clear and convincing evidence and that the Department of Children's Services exerted reasonable efforts to reunite the family, we affirm the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and RICHARD H. DINKINS, J., joined.

Jill Grim, Hendersonville, Tennessee, for the appellant, Tony T.

Robert E. Cooper, Jr., Attorney General and Reporter, and Leslie Curry, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

**OPINION**

FACTUAL AND PROCEDURAL HISTORY

This is our second occasion to consider whether the juvenile court erred in terminating the parental rights of Tony T. ("Father") to his four children, Brandon T. (born in 2003), Dakota T. (born in 2005), Kelsey T. (born in 2006), and Shyan T. (Born in 2008). The first appeal arose after the Department of Children's Services ("DCS" or "the Department")

_____

[1]To preserve anonymity in cases involving a minor child, this Court redacts the child's surname and that of any individuals who share it.

received a referral that Brandon came to school with a handprint bruise on his face and that the family had been living in a car. DCS took custody of the children in 2007 and placed them in a pre-adoptive home with foster parents. In 2008, the children were adjudicated dependent and neglected and, thereafter, DCS filed a petition to terminate the parental rights of Father and Elizabeth T.B. ("Mother").[2] The trial court granted the petition, and the parents appealed. This Court reversed the trial court's judgment, finding that DCS failed to prove by clear and convincing evidence that it made reasonable efforts toward reunification.[3] *See In re Brandon T.*, No. M2009-02459-COA-R3-PT, 2010 WL 3515677 (Tenn. Ct. App. Sept. 8, 2010).

Following the reversal of the trial court's termination of parental rights, DCS held a permanency plan meeting, at which Father was present, and developed a permanency plan with the goal being reunification or, alternatively, adoption. The plan, dated March 1, 2011, included the following "action steps" for Father: obtain a legal means of income and provide monthly proof of income; apply for aid through DHS; obtain and maintain housing sufficient to meet the needs of the children by June 1, 2011; complete a parenting assessment; demonstrate the ability to manage the children; refrain from obtaining new criminal charges; submit to regular drug screens; and seek regular medical care. The plan also required Father to pay child support and apply for state insurance.

On July 22, 2011, the guardian ad litem filed a motion to temporarily suspend visitation between the children and the parents until visitation was recommended by the children's therapist. On July 22, 2011, the trial court granted the motion to suspend visitation. On November 10, 2011, a second permanency plan was created. The action steps remained the same because Father had not completed any of the steps listed in the March

---

[2] Elizabeth T.B., the mother of the children, was a party in the first appeal; however, she is not a party to the instant case.

[3] Specifically, we held:

Nothing in this opinion should be interpreted as approving the actions of the parents in this case. The preponderance of the evidence supports the trial court's factual findings concerning the deplorable situation of the three oldest children when they were taken into custody and the continuing instability of the parents at the time of the hearing. We cannot find, however, based upon the deficient state of the record, that DCS met its burden of proving by clear and convincing evidence that it made reasonable efforts toward reunification.

*In re Brandon T.*, No. M2009-02459-COA-R3-PT, 2010 WL 3515677, at *7 (Tenn. Ct. App. Sept. 8, 2010).

2011 plan. The trial court entered an order ratifying the November plan on March 14, 2012 and found that Father was not in substantial compliance with the plan. The court held that the "responsibilities outlined in said permanency plan are reasonable and related to the achievement of the goals, related to remedying the conditions that necessitated foster care and in the best interest of the children." The court further held that DCS is "in compliance with the plan . . . and is making reasonable efforts toward achievement of the goals of reunification and adoption . . . ."

On January 20, 2012, DCS filed a petition to terminate parental rights. On February 10, 2012, Mother surrendered her parental rights to the four children. A third permanency plan dated June 7, 2012 was ratified on July 20, 2012. The new plan included the same action steps as the November plan. Father completed one action step by undergoing a psychological assessment, which DCS paid for, in July 2012.

On July 20, 2012, the trial court held a hearing on the petition to terminate Father's parental rights. Father and DCS caseworker, Jennifer Maulden, testified.[4] On August 20, 2012, the trial court entered an order terminating Father's parental rights on the grounds of persistent conditions (Tenn. Code Ann. § 36-1-113(g)(3)); abandonment by failure to provide a suitable home despite reasonable efforts by DCS (Tenn. Code Ann. § 36-1-113(g)(1) and § 36-1-102(1)(A)(ii)); and substantial noncompliance with the permanency plan (Tenn. Code Ann. § 36-1-113(g)(2) and § 37-2-403(a)(2)). The court found termination of Father's rights was in the best interest of the children. Father appeals.

STANDARD OF REVIEW

A parent's right to the care, custody, and control of their child is a recognized liberty interest protected by the federal and state constitutions. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Consequently, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)).

Tennessee's termination statutes identify situations in which the state's interest in a child's welfare justifies interference with a parent's constitutional rights. *In re W.B., IV*, No. M2004-00999-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). To support the termination of parental rights, petitioners must prove both the existence of at least one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c)(1); *In re Audrey*

_____

[4] The testimony presented will be discussed in further detail below as relevant to the issues on appeal.

*S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts require individualized decision making and a heightened standard of proof in deciding termination cases. *See Santosky*, 455 U.S. at 769; *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Thus, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004) (citations omitted). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened burden of proof required by Tenn. Code Ann. § 36-1-113(c)(1), a reviewing court must adapt the customary standard of review set forth by Tenn. R. App. P. 13(d). *Id.* at 654. First, we review the trial court's findings of fact de novo with a presumption of correctness unless the evidence preponderates otherwise, in accordance with Tenn. R. App. P. 13(d). *Id.* Next, we must determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Id.*

ANALYSIS

Father's primary contention on appeal is that DCS failed to provide reasonable efforts to assist him in reunifying with the children. He further argues that the evidence does not clearly and convincingly support the grounds for termination as found by the trial court.

*Reasonable efforts*

We begin by considering whether DCS made reasonable efforts to reunite Father with the children. "Because of the prominent role that the Department plays in the lives of so many dependent and neglected children, the Tennessee General Assembly has explicitly imposed on the Department the responsibility to make reasonable efforts to reunify children and their parents after removing the children from their parent's home." *In re Tiffany B.*, 228 S.W.3d 148, 157-58 (Tenn. Ct. App. 2007) (citing Tenn. Code Ann. § 37-1-166). This requirement does not obligate the Department to exert "herculean" efforts to reunify the family; however, DCS employees "must use their superior insight and training to assist the parents in addressing and completing the tasks identified in the permanency plan." *In re*

*Giorgianna H.*, 205 S.W.3d 508, 519 (Tenn. Ct. App. 2006).

Tennessee Code Annotated section 37-1-166(g)(1) defines reasonable efforts as the "exercise of reasonable care and diligence by the department to provide services related to meeting the needs of the child and the family." The Department's first step is to establish a permanency plan with terms that are "reasonable and related to remedying the conditions which necessitate foster care placement." Tenn. Code Ann. § 37-2-403(a)(2)(C). The reasonableness of the Department's efforts must be decided on a case by case basis, and courts must consider the following factors when deciding whether DCS made reasonable efforts:

> (1) the reasons for separating the parent from his or her child or children, (2) the parent's physical and mental abilities, (3) the resources available to the parent, (4) the parent's efforts to remedy the conditions that required the separation, (5) the resources available to the Department, (6) the duration of the parent's remedial efforts, and (7) the closeness of the fit between the conditions that led to the initial separation, the requirements in the permanency plan, and the Department's efforts.

*In re C.M.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *7 (Tenn. Ct. App. Mar. 9, 2004).

Notwithstanding the prominent role the Department must play in the reunification process, reunification is a "two-way street." *State Dep't of Children's Servs. v. S.M.D.*, 200 S.W.3d 184, 198 (Tenn. Ct. App. 2006). Thus, parents "must also make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required the Department to remove their children from their custody." *In re Giorgianna H.*, 205 S.W.3d at 519.

In this case, the children were removed from Father's custody due to Father's physical abuse of Brandon T. and the lack of suitable living conditions for the children. On March 1, 2011, the Department created a permanency plan which required Father to, *inter alia*, earn a legal means of income and obtain and maintain housing sufficient to meet the needs of the children. These tasks were reasonably related to remedying the conditions which necessitated foster care. *See* Tenn. Code Ann. § 37-2-403(a)(2)(C).

Our review of the record reveals that DCS exerted reasonable efforts to assist Father in achieving the goals of obtaining income and housing. Beginning in October 2010, DCS case worker Jennifer Maulden met with Father to discuss the requirements that would likely be on the permanent parenting plan and emphasized to Father that he would need appropriate

housing for his four children with suitable furniture and bedding. She told Father that DCS would be able to assist him with providing appropriate furnishings for the children. At her initial meeting with Father, and up until the time of trial, Father lived in a one-room concrete outbuilding behind his grandmother's home.[5] Ms. Maulden testified that the major obstacle to procuring housing for Father was his lack of income.[6] To address this concern, Ms. Maulden provided Father with a list of places that were hiring and spoke with him about an upcoming job fair. In addition, Ms. Maulden picked Father up and drove him around Gallatin to approximately thirty-eight different businesses seeking work. Ms. Maulden also took Father to the public library and helped him get a library card so he could use library computers to apply for jobs online. Ms. Maulden testified that she set up a second date for her DCS co-worker to pick Father up to transport him to search for employment; however, Father did not come out of his house at the agreed time and did not answer his phone when he was called.

Father asserts that these actions by DCS did not constitute clear and convincing evidence of reasonable efforts. Specifically, he contends that the Department's failure to assist him in attaining his GED and the Department's failure to help him resolve his transportation issues evidenced the Department's lack of reasonable efforts.[7] Father testified that he was employed at ABC Fuel for two and a half months where he earned approximately

---

[5] Ms. Maulden described the outbuilding as follows: "It's a block building. It is kind of a one-room-type setup. It does have a restroom with a toilet and stand-up shower in it. It does have air conditioning. There was a twin bed and a kitchen table when I visited the home. . . ."

[6] Ms. Maulden testified regarding the obstacles she faced when assisting Father with procuring sufficient housing:

> The department can assist and often does assist the families that it works with by helping to pay, like, the first month's rent somewhere so they can kind of get a headstart, but in order to do that I have to turn in a budget form and that that income would be sufficient to pay the following month's rent, that the department isn't going to pay rent for a family for a month and then the next month they're going to get an eviction notice because they're unable to pay the bills because they don't have income sufficient to meet the needs of the household.

[7] Father also argues that DCS's failure to submit an affidavit of reasonable efforts precludes a finding that reasonable efforts were made. Father's argument is without merit. This court has previously held that the Department's failure to file an affidavit of reasonable efforts is "not fatal if the Department introduces competent evidence specifically identifying the services required in the permanency plan, the services actually provided to the parents, and the outcomes of these services." *In re C.M.M.*, 2004 WL 438326, at *8 (citing *In re T.B.S.*, No. M2002-02920-COA-R3-JV, 2003 WL 21338699 (Tenn. Ct. App. June 10, 2003)). Ms. Maulden's extensive testimony of her hands-on experiences with Father constituted competent evidence on the issue of reasonable efforts.

$6,000. He testified that ABC Fuel let him go him for his failure to have a GED. Father admitted that he did not use his earnings from this employment to pay child support or to secure appropriate housing for his children; instead, he gave most of the money to his girlfriend and her family to help pay their bills. Father testified he believed he could regain employment with ABC Fuel if he received his GED. Regarding the GED, Ms. Maulden testified on cross-examination as follows:

> Q. And he did inform you that he lost a job for not having a GED, correct?
>
> A. Correct.
>
> Q. So wouldn't it make sense that you should give him, you know, some referrals to helping him get that?
>
> A. He hasn't had an interest in getting a GED that I was aware of, and getting his GED is not part of the permanency plan because DCS cannot require a parent to obtain their GED or high school diploma as part of the permanency plan. I do suppose if he had indicated that that was something he wanted to do or had some interest in doing that we could have been working on that.

Regarding his transportation issues, Father testified that his driver's license has been revoked since 2007.[8] When Ms. Maulden was asked what efforts the Department took to help Father get his license reinstated, Ms. Maulden stated, "it's a financial issue, and the Department will not pay for the criminal issues of a parent so they can reattain their license."

In light of the facts summarized above and other relevant evidence, we have determined that the Department exerted reasonable efforts to assist Father in achieving the stated goals of the permanency plan. The Department exercised "reasonable care and diligence" from 2010 until the date of the trial in providing services related to meeting Father's needs. *See* Tenn. Code Ann. § 37-1-166(g)(1). Thus, we affirm the trial court's finding that DCS provided reasonable efforts to reunify the family. We next consider whether there is clear and convincing evidence to support the grounds for termination.

### *Persistence of conditions*

Parental rights may be terminated on the basis of "persistence of conditions" as defined by Tenn. Code Ann. § 36-1-113(g)(3) when:

---

[8] Although Father was unable to drive, he lived within walking distance of several businesses, and he had access to a bicycle.

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home

With regard to persistent conditions, the trial court found as follows:

It has been six (6) months or more since the Juvenile Court's protective custody order removed the children from Father. The children were initially removed from their parents' custody because Mother and Father did not have a home for the children or means of support for the children, and were living in their car; additionally, Respondent Father physically abused the child, Brandon [T.].

The Court finds that the conditions that led to removal still persist. Father remains willfully unemployed and has no stable means of income to care for or provide housing for his children. Father has earned sufficient money, according to his own testimony, which would have assisted him substantially with housing for himself and the children. However, instead of putting that money toward reunifying with his children, he gave it to a girlfriend so she could pay her bills. Father has made absolutely no effort whatsoever to remedy his condition to such a degree that reunification with his children can even be considered.

The court further held that despite the reasonable efforts exerted by DCS to assist Father, "Father has willfully failed to take advantage of the Department's help."

The evidence is clear and convincing that Father has not remedied the conditions that led to the removal of the children. Despite DCS's efforts to assist him, Father has not been

able to sustain adequate housing or earn sufficient income to meet the children's needs. Moreover, there is little likelihood that Father's financial instability and lack of suitable housing will be remedied in the near future so the children could be safely reunited with him. Accordingly, we affirm the trial court's finding that the Department proved the "persistent conditions" ground for termination pursuant to Tenn. Code Ann. § 36-1-113(g)(3).

*Abandonment by failure to provide a suitable home*

Abandonment as defined in Tenn. Code Ann. § 36-1-102 is a ground for termination of parental rights. *See* Tenn. Code Ann. § 36-1-113(g)(1). Tennessee Code Annotated section 36-1-102(1)(A) contains several definitions of abandonment, including abandonment by failure to provide a suitable home:

> (ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date. The efforts of the department or agency to assist a parent or guardian in establishing a suitable home for the child may be found to be reasonable if such efforts exceed the efforts of the parent or guardian toward the same goal, when the parent or guardian is aware that the child is in the custody of the department;

Father concedes that the children were found to be dependent and neglected and had been removed from the home for more than six months. Likewise, he does not argue that his residence, which he described as "about the size of a car garage, big enough for one person to stay in" is adequate housing for the children. He argues that DCS failed to make reasonable efforts to assist him in establishing a suitable home and that there was no evidence that he failed to make reasonable efforts to provide a suitable home for the children. We disagree.

As discussed above, the record shows that Father has done little to procure suitable housing for the children. When Father did have an income, he chose to spend his money on a girlfriend instead of on housing or child support. We have previously determined that the Department made reasonable efforts to assist Father, thus we must affirm the trial court's finding that Father abandoned the children by failing to provide a suitable home pursuant to Tenn. Code Ann. § 36-1-102(1)(A)(ii).

We have determined at least two statutory grounds for termination have been clearly and convincingly established. The trial court is only required to find one statutory ground for termination of parental rights. *See In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003). Accordingly, although not directly raised as an issue on appeal, we turn our attention to whether termination of parental rights was in the children's best interest.

*Best interest*

Tennessee Code Annotated section 36-1-113(i) contains a non-exhaustive list of factors a trial court is required to consider in making the best interest determination. Every factor need not be applicable for the trial court to determine it is in the best interest of the child for a parent's rights to be terminated. *See In re Audrey S.*, 182 S.W.3d at 878. The best interest analysis is a fact-intensive inquiry requiring the court to consider the unique facts of the case "from the child's, rather than the parent's, perspective." *In re Giorgianna H.*, 205 S.W.3d at 523.

With respect to best interests, the trial court stated, in relevant part:

It is in the children's best interests for termination to be granted as to Father, because he has made minimal efforts, if any at all, to prepare for and provide for these four (4) children since 2007. These children have remained wards of the state of Tennessee for nearly four (4) years while waiting for their Father to provide for their basic needs. Father states that he is "working on it" but this does not appear to be any time in the near or reasonable future. It is time to allow these children to move on and find permanency.

The evidence clearly and convincingly supports the trial court's findings regarding the best interest of the children. Ms. Maulden testified that the children were thriving in their pre-adoptive foster home in which they have resided since 2007; she presented photographs of the children in support of her testimony. She further testified that the children become distressed when they participate in telephone conversations with Father. When asked whether she thought phone conversations should continue, Ms. Maulden answered, "no, because the children are very distressed after the calls. They wet themselves. They have

nightmares. They cry. They have behaviors that - - they tear up their [eye] glasses . . . ."

Father has not made an adjustment of circumstance or conditions as to make it safe to return the children to him. In sum, the record contains ample evidence that the children's best interest would be served by terminating Father's parental rights.

CONCLUSION

For the reasons discussed above, we affirm the trial court's decision. Costs of appeal are assessed against the appellant, Tony T., for which execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE