# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### August 26, 2014 Session

## IN RE: SHAMEEL S., ET AL.

**Appeal from the Juvenile Court for Anderson County**
**No. J28082, J28083     Brandon Fisher, Judge**

_____

### No. E2014-00294-COA-R3-PT-FILED-SEPTEMBER 19, 2014

_____

Valerie S. ("Mother") appeals the termination of her parental rights to her minor children Shameel S., born November 1996, and LaRiea S., born May 1998, ("the Children"). Acting upon a petition to terminate parental rights filed by the Tennessee Department of Children's Services ("DCS"), the Juvenile Court for Anderson County ("the Juvenile Court") terminated Mother's parental rights to the Children on the ground of severe abuse pursuant to Tenn. Code Ann. § 36-1-113(g)(4) and Tenn. Code Ann. § 37-1-102. Mother argues on appeal that DCS did not exercise reasonable efforts to reunify Mother and the Children in the period before a finding of severe abuse. We find and hold that clear and convincing evidence was shown that the ground existed to terminate Mother's parental rights to the Children for severe child abuse, that clear and convincing evidence was shown that termination was in the Children's best interest, and that DCS exercised reasonable efforts. We affirm the Juvenile Court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Billy P. Sams, Oak Ridge, Tennessee, for the appellant, Valerie S.

Robert E. Cooper, Jr., Attorney General and Reporter; and, Jordan Scott, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

# OPINION

## Background

The facts of this case are tragic. Mother's two year old granddaughter died while under Mother's care. The autopsy revealed chronic sexual abuse. The death was determined to be non-accidental. At the time of her granddaughter's death, Mother had three minor children living with her: the Children, and another minor who since has turned 18. Mother, later charged with first-degree murder, was incarcerated with bond set at $1,000,000. Details emerged concerning abuse against the other children in Mother's care. This alleged abuse consisted of, among other things, unusual punishments and intentional deprivation of food. DCS obtained a protective custody order removing the Children from Mother's care. The Children were adjudicated dependent and neglected by court order based upon Mother's severe abuse. This May 2012 *nunc pro tunc* order was not appealed. In August 2012, DCS filed a petition to terminate Mother's parental rights to the Children on the ground of severe child abuse.

Trial was held in August 2013. LaRiea testified first. LaRiea, then in the tenth grade, had been in her current foster home since August 2012. LaRiea testified that she liked her foster mother and felt safer with her. LaRiea stated that she did not want to return to Mother's custody as she did not feel safe with her. LaRiea had undergone intensive therapy. LaRiea wanted the no contact order with Mother to remain in place. Further, LaRiea requested that the court terminate Mother's parental rights to her. On cross-examination, LaRiea testified that she was not malnourished upon her entry into custody, that she had no injuries, and had clean clothes while at Mother's home. LaRiea did not wish to be adopted.

Shameel testified next. Shameel was seeing a therapist. Shameel stated that he did not want to return to Mother. Regarding punishments he had received, Shameel testified that Mother had made him stand in the corner of a room all night. Shameel stated that he felt safe at his current placement. On cross-examination, Shameel testified that he would like to be adopted by one Joyce B. Shameel stated that when he entered custody, he required no medical attention, required no diet to gain weight, and that his clothes were clean. Shameel testified that he needed additional therapy.

Mother testified. Mother was incarcerated at the time of trial on the charge of first-degree murder. Mother testified that if she were released from jail, she could live with her sister. Mother was on Social Security before she was incarcerated. Mother's testimony soon came to an end when she began to speak in an unidentifiable language. After this behavior continued for a while, Mother was removed from the courtroom. The Juvenile

Court stated: "Let the record reflect that [Mother] is continuing to speak in an unidentifiable language and is being nonresponsive to the questions."

Heather Poster ("Poster") testified. Poster, a case manager with DCS, was the case manager for the Children. Poster had been the Children's case manager for over a year at the time of trial. Poster testified that the Children were doing well in their current placements. According to Poster, the Children would not be safe with Mother. Poster stated that she did not believe Mother had proven she had completed any of her action steps. Poster stated that Mother was noncompliant with in-home services. Mother has no income. According to Poster, the Children could not receive the kind of services they need under Mother's care. Mother also never completed the mental health evaluation that DCS asked for. Regarding why there had been no visits between Mother and the Children, Poster stated that there was a no contact order in place until Mother provided a mental health assessment. Poster testified that Mother continued to maintain that there were no problems with her parenting or discipline of the Children. On cross-examination, Poster stated that she did not know of anywhere Mother could have gone to get the required mental health evaluation at DCS's expense. Poster testified that DCS had been relieved of reasonable efforts before she came on the case. Poster acknowledged that Mother denied any sexual assault had occurred in her home.

In January 2014, the Juvenile Court entered its order terminating Mother's parental rights to the Children on the ground of severe child abuse.[1] The Juvenile Court found and held, in part:

> The Anderson Court adjudicated the children dependent and neglected, and the victims of severe abuse at the hands of [Mother] . . . on May 15, 2012, after issuing an emergency protective custody order placing the children in temporary state custody on May 3, 2011. The adjudicatory Order is no longer subject to appeal and is therefore final. The children have been in foster care continuously since the Court's protective custody order.

> The severe abuse to which the children were subjected was continuous physical punishment and intentional deprivation of food by the mother, and the father's knowing failure to protect the children from this severe abuse.

***

---

[1]The Juvenile Court also terminated the parental rights of the Children's father. The termination of the father's parental rights to the Children is not before us on appeal.

During the mother's testimony she began to repeatedly 'speak in tongues' and persistently failed to respond to counsels' questions. After repeated attempts by the Court to instruct the mother to cease her disruptive behavior and to answer the questions asked by counsel the Court had the mother removed from the courtroom as non-responsive to instructions. The Court finds this to be a voluntary removal on the part of the mother in that she affirmatively nodded her understanding that she would be removed from the courtroom [if] she did not cease her disruptive behavior and then continued to engage in that behavior.

Both children testified that they do not wish to return to their mother in the future. Shameel stated that he 'would be o.k. with,' his mother's parental rights being terminated and LaRiea requested the Court to terminate her mother's parental rights. While Shameel asserted that he does wish to be adopted, LaRiea stated that she does not desire to be adopted.

Both the mother and father severely abused their children and have since made no changes to their conduct, circumstances or personal conditions that would make it safe for the children to be returned to the custody of either parent. There no longer exists any meaningful relationship between the children and either parent – the father has utterly abandoned the children in foster care and both children are adamant that they never want to return to their mother. The mother has no home and no plan to obtain stable housing. The mother's mental and/or emotional condition, as evidenced by her severe abuse of the children and her behavior in court, would absolutely pose a risk of harm to the children if they were returned to her care. Finally, the children are stable in their foster homes and a change of caretakers at this time would have a detrimental effect on them.

\*\*\*

In this case, pursuant to Tenn. Code Ann. §§36-1-116(g)(3) and 37-1-102(b)(21), the Court finds that there is clear and convincing evidence that both the mother and father committed severe abuse against the children as demonstrated by the final Adjudicatory Order of the Court, finding this severe abuse by clear and convincing evidence, on May 15, 2012.

\*\*\*

In this case, the Court finds that there is clear and convincing evidence that termination of [Mother's] . . . . parental rights is in the best interest of the children in that the mother and father severely abuse their children; neither parent has made changes in their conduct, lifestyle, or circumstances that would make it safe for the children to be returned to the care of either parent; the father has abandoned the children in foster care and the children adamantly state that they never want to return to their mother; there no longer exists any meaningful relationship between the children and the parents; the mother has no home and no plan to obtain a stable residence; the mother's mental and/or emotional condition would pose a risk of harm to the children if they were returned to her care; and the children are stable in their current placements and a change of caretakers at this time would have a detrimental effect on them.

Mother appeals the termination of her parental rights.

## Discussion

Mother raises one issue on appeal, which we restate as: whether the Juvenile Court erred in terminating Mother's parental rights to the Children when DCS allegedly failed to exercise reasonable efforts to reunify Mother and the Children. Although Mother appeals neither the ground for termination of her parental rights as found by the Juvenile Court nor the Juvenile Court's best interest determination, we nevertheless will address those issues as well.

Our Supreme Court reiterated the standard of review for cases involving termination of parental rights stating:

> This Court must review findings of fact made by the trial court *de novo* upon the record "accompanied by a presumption of the correctness of the finding, unless the preponderance of the evidence is otherwise." Tenn. R. App. P. 13(d). To terminate parental rights, a trial court must determine by clear and convincing evidence not only the existence of at least one of the statutory grounds for termination but also that termination is in the child's best interest. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002) (citing Tenn. Code Ann. § 36-1-113(c)). Upon reviewing a termination of parental rights, this Court's duty, then, is to determine whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence.

-5-

*In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006).

In *Department of Children's Services v. D.G.S.L.*, this Court discussed the relevant burden of proof in cases involving termination of parental rights stating:

> It is well established that "parents have a fundamental right to the care, custody, and control of their children." *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988) (citing *Stanley v. Illinois*, 405 U.S. 645, 92 S. Ct. 1208, 31 L. Ed. 2d 551 (1972)). "However, this right is not absolute and parental rights may be terminated if there is clear and convincing evidence justifying such termination under the applicable statute." *Id.* (citing *Santosky v. Kramer*, 455 U.S. 745, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)).
>
> Termination of parental or guardianship rights must be based upon a finding by the court that: (1) the grounds for termination of parental or guardianship rights have been established by clear and convincing evidence; and (2) termination of the parent's or guardian's rights is in the best interests of the child. Tenn. Code Ann. § 36-1-113(c). Before a parent's rights can be terminated, it must be shown that the parent is unfit or substantial harm to the child will result if parental rights are not terminated. *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999); *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998). Similarly, before the court may inquire as to whether termination of parental rights is in the best interests of the child, the court must first determine that the grounds for termination have been established by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c).

*Dep't of Children's Servs. v. D.G.S.L.*, No. E2001-00742-COA-R3-JV, 2001 Tenn. App. LEXIS 941, at **16-17 (Tenn. Ct. App. Dec. 28, 2001), *no appl. perm. appeal filed*. Clear and convincing evidence supporting any single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first address whether the Juvenile Court erred in terminating Mother's parental rights to the Children when DCS allegedly failed to exercise reasonable efforts to reunify Mother and the Children. In *In re: Giorgianna H.*, this Court explained:

The reasonableness of the Department's efforts depends upon the circumstances of the particular case. The factors that courts use to determine the reasonableness of the Department's efforts include: (1) the reasons for separating the parent from his or her children, (2) the parent's physical and mental abilities, (3) the resources available to the parent, (4) the parent's efforts to remedy the conditions that required the removal of the children, (5) the resources available to the Department, (6) the duration and extent of the parent's remedial efforts, and (7) the closeness of the fit between the conditions that led to the initial removal of the children, the requirements of the permanency plan, and the Department's efforts.

*In re: Giorgianna H.*, 205 S.W.3d 508, 519 (Tenn. Ct. App. 2006) (footnote omitted). "[T]he Department's reunification efforts need not be 'herculean,'" and:

The Department does not have the sole obligation to remedy the conditions that required the removal of children from their parents' custody. When reunification of the family is a goal, the parents share responsibility for addressing these conditions as well. Thus, parents desiring the return of their children must also make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required the Department to remove their children from their custody. *State Dep't of Children's Servs. v. B.B.M.*, 2004 WL 2607769, at *7; *In re C.M.M.*, 2004 WL 438326, at *7; *In re R.C.V.*, No. M2001-02102-COA-R3-JV, 2002 WL 31730899, at *12 (Tenn. Ct. App. Nov. 18, 2002) (No Tenn. R. App. P. 11 application filed).

*Id.* (footnote omitted).

In order to determine whether DCS exercised reasonable efforts, it is important to review what efforts were in fact made by DCS. Based on the record before us on appeal, we can glean the following about DCS's efforts. DCS provided in-house services to Mother for grief counseling. After the Children were removed, DCS provided in-home parenting classes, information on mental health facilities, medication management services, therapy, case management services, referrals for parental competency evaluation, and referrals for parenting education services. DCS crafted four permanency plans and went over them with Mother at least once. DCS held child and family team meetings and attempted to contact Mother. Mother, however, did not complete grief counseling, participated sporadically in the in-home parenting classes, and refused DCS referrals for outside parenting education. Mother failed most of the requirements of her permanency plan, including, significantly, providing a safe and stable home.

Against all of this, Mother argues that, because of issues with payment and providers, it was impossible for her to obtain a forensic evaluation as required. The issue before us, however, is that of DCS's reasonable efforts, which must be evaluated in light of the overall circumstances. It is not as though Mother's parental rights hinge totally on the matter of the forensic evaluation. There were numerous other services and requirements implemented by DCS that Mother failed to follow through on. Even if a parent is unable for whatever reason to complete one component of a plan to reunify her with her children, that neither excuses her from completing other steps within her power towards that end nor necessarily means DCS failed to exercise reasonable efforts. Given the record before us, we find and hold that DCS exercised reasonable efforts given the circumstances of this case.

We are aware of the recent case of *In re: Kaliyah S.*, No. 2013-01352-COA-R3-PT, 2014 WL 819419 (Tenn. Ct. App. Feb. 28, 2014), which discussed exactly when DCS is required to persist in exercising reasonable efforts to reunify parents and children under aggravating circumstances. Our Supreme Court has granted a Rule 11 petition for application to appeal in *In re: Kaliyah S.* but has not yet filed its opinion in that case. However, we believe the question of when DCS is relieved of making reasonable efforts is not dispositive to this case. In our judgment, DCS exercised reasonable efforts throughout the instant case, and, what is more, given Mother's overall lack of cooperation and denial as shown by the record, additional reasonable efforts to reunify the family likely would have been futile. "If [Mother] is unwilling to acknowledge and address the problem, then nothing DCS could do would remedy the problem." *In re: Alexis C.*, No. E2013-02498-COA-R3-PT, 2014 WL 2917376, at *21 (Tenn. Ct. App. June 25, 2014), *no appl. perm. appeal filed*.

We next address whether the Juvenile Court erred in finding and holding that the ground of severe child abuse was proven by clear and convincing evidence. In pertinent part, Tenn. Code Ann. § 36-1-113(g) provides:

> (4) The parent or guardian has been found to have committed severe child abuse as defined in § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse against the child who is the subject of the petition or against any sibling or half-sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian;

Tenn. Code Ann. § 36-1-113(g)(4) (2014). In pertinent part, Tenn. Code Ann. § 37-1-102 provides:

> (23) "Severe child abuse" means:

(A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;

(ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(d).

(B) Specific brutality, abuse or neglect towards a child that in the opinion of qualified experts has caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment, and the knowing failure to protect a child from such conduct;

(C) The commission of any act towards the child prohibited by §§ 39-13-502 – 39-13-504, 39-13-515, 39-13-522, 39-15-302, 39-15-402, and 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; or

(D) Knowingly allowing a child to be present within a structure where the act of creating methamphetamine, as that substance is identified in § 39-17-408(d)(2), is occurring;

Tenn. Code Ann. § 37-1-102 (21) (2014).[2]

The Juvenile Court noted the prior order adjudicating the Children as victims of severe child abuse at the hands of Mother. The Juvenile Court also found that the Children were subject to "continuous physical punishment and intentional deprivation of food by the mother . . . ." The evidence in the record on appeal does not preponderate against any of the findings of the Juvenile Court. We hold that clear and convincing evidence supports the ground of severe child abuse.

The last issue we address is whether the Juvenile Court erred in finding and holding that termination of Mother's parental rights to the Children is in the Children's best interest. As pertinent to this issue, Tenn. Code Ann. § 36-1-113 provides:

---

[2]This statute has been amended since the final judgment was entered in this case, but the change–the addition of 39-13-515 to the list of statutes in part (C)–does not impact the outcome of this case.

(i) In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

(6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (2014).

As shown above, the Juvenile Court made detailed findings on the issue of best interest. The evidence in the record does not preponderate against the Juvenile Court's findings. The record reflects that Mother is in no position to parent the Children, nor is she likely to be able to parent them in the near future. Although not in itself dispositive, we also specifically take note, as did the Juvenile Court, of Mother's repeated unprovoked outbursts at trial which led to her voluntary removal from the courtroom, behavior which does nothing to suggest that the Children's best interest is served by Mother retaining her parental rights to them. Meanwhile, the Children are faring well in their new placements and termination of Mother's parental rights advances their prospects for stability and well-being. We find and hold, as did the Juvenile Court, that clear and convincing evidence exists such that it is in the Children's best interest for Mother's parental rights to be terminated.

In our view, DCS made reasonable efforts in this tragic case. When Mother had the opportunity to do so, she simply made no adequate effort of her own. As the ground for termination of severe child abuse was proven by clear and convincing evidence, and, clear and convincing evidence is such that the Children's best interest is served by termination of Mother's parental rights, we affirm the judgment of the Juvenile Court.

## Conclusion

The judgment of the Juvenile Court is affirmed, and this cause is remanded to the Juvenile Court for collection of the costs below. The costs on appeal are assessed against the appellant, Valerie S., and her surety, if any.

_____
D. MICHAEL SWINEY, JUDGE