# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs February 1, 2019

## IN RE ANTOINE J. ET AL.

**Appeal from the Circuit Court for Shelby County
No. CT-003884-16  Gina C. Higgins, Judge**

_____

### No. W2017-02456-COA-R3-JV
_____

The mother of a three-year-old child appeals the trial court's ruling that she committed severe child abuse under Tennessee Code Annotated § 37-1-102(b)(27). The Department of Children's Services (the "Department") received a referral from a Memphis hospital after determining that the child had suffered a fractured femur along with other injuries that were not usually caused by normal childhood play. Following its initial investigation, the Department determined that the injuries were the result of abuse by the mother's boyfriend. Subsequently, the Department filed a petition against the mother and her boyfriend to declare her children dependent and neglected and the victims of severe child abuse. A juvenile court magistrate and the juvenile court judge each found the children dependent and neglected and that the mother committed severe child abuse by failing to protect the child from her boyfriend's abuse and failing to timely seek medical attention for the child. Following an appeal, the circuit court made the same findings. The mother appeals the determination that she committed severe child abuse. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON II and KENNY W. ARMSTRONG, JJ., joined.

Anna Leslie Phillips, Germantown, Tennessee, for the appellant, Katrina J.[1]

_____

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

Herbert H. Slatery, III, Attorney General and Reporter, Jordan Keith Crews, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

Autumn Blaise Chastain, Memphis, Tennessee, Guardian ad Litem.

## OPINION

### PROCEDURAL AND FACTUAL HISTORY

When the incident giving rise to this appeal occurred, Katrina J. ("Mother") was living in the home of her boyfriend, Anthony G., with their three-month-old daughter, Ameryiah,[2] and Mother's three-year-old son, Antoine[3] (collectively, "the Children").

On the morning of January 10, 2015, Cidney Edwards, Mother's cousin, went to Mother's home between 9:00 and 10:00 a.m. When Ms. Edwards arrived, she observed Antoine lying on the bedroom floor, crying. After observing multiple bruises on Antoine and realizing that Antoine was in pain, Ms. Edwards insisted that she and Mother take Antoine to Germantown Methodist Hospital. Following an initial assessment, Antoine was transported to the LeBonheur Children's Hospital Emergency Room.

While Antoine was being examined and treated at the LeBonheur Emergency Room, the Department received a referral that Antoine's injuries may be the result of physical abuse. Based on the referral, Alisha Fondren, a child-abuse investigator with the Department, immediately traveled to LeBonheur and interviewed Ms. Edwards, Mother, and Antoine.

During their discussions, Mother told Ms. Fondren that when her boyfriend Anthony G. came home the night before, he became very irate when he learned that Antoine had eaten the only piece of cheesecake and proceeded "to beat" Antoine. Mother stated she was in another room, but she heard Anthony G. beating Antione and Antoine screaming. Mother also said she attempted to enter the room where Antoine was being beaten, but she was threatened with physical harm if she intervened. As a result, Mother waited in the bedroom and did not see Antoine until later that evening when Anthony G. put him on a pallet in their bedroom. Mother also told Ms. Fondren that she did not notice

---

[2] Ameryiah has also been identified as A'meryiah and Ameriah.

[3] The whereabouts of Antoine's father, Bernard J., are unknown. Bernard. J. did not participate in the proceedings below and is not a party to this appeal.

bruising or swelling on Antoine's leg until the next morning. As noted above, Ms. Edwards was so alarmed by Antoine's condition when she arrived at Mother's home that she insisted they take Antoine to the hospital.

One of the physicians to examine Antoine was Dr. Karen Lakin, a pediatrician specializing in child-abuse pediatrics. She testified by deposition at trial that Antoine's physical examination revealed "a significant amount of bruising to his forehead," "some tenderness and swelling to the right side of his neck," and "multiple areas of bruising on the right thigh as well and some abrasions."[4] Additionally, an X-ray revealed an acute transverse fracture of the left femur, the largest bone in the leg, which required that the doctors set the broken femur and place the leg in a cast.[5] The medical records also revealed that Antoine had "some mildly elevated liver functions," which, according to Dr. Lakin, "can be associated with blunt trauma to the liver."

Dr. Lakin testified that a transverse fracture of the femur is not usually caused by normal childhood play; instead, a transverse femur fracture is usually caused by a direct blow. As she explained: "the femur is the largest bone in the body, so in a three-year-old, it would take considerable force to break the femur." In her expert opinion, Antoine's injuries were caused by non-accidental trauma. Dr. Lakin also testified that a femur fracture would have caused "[s]evere pain" for Antoine, and she opined that Antoine would not have gone to sleep easily after the fracture occurred.

Based on the foregoing and other information, the Department filed a petition in the Juvenile Court of Shelby County against Mother and Anthony G. to adjudicate the Children dependent and neglected.[6] The petition also alleged that Antoine was the victim of severe child abuse due to Anthony G.'s physical assault and Mother's failure to protect Antoine or seek medical treatment for him.

---

[4] Dr. Lakin is an assistant professor of pediatrics at University of Tennessee and medical director of the LeBonheur CARES team for LeBonheur Children's Hospital. Her deposition was admitted as evidence at trial.

[5] Ms. Fondren described the cast as going "from about . . . [the] middle of [Antoine's] stomach all the way down."

[6] The referral occurred on January 10, 2015, and the petition was filed four months later on May 12, 2015. In the interim, it was not necessary for the Department to remove the Children from Mother's custody because the Department and the family immediately placed the Children with Mother's cousins, Cidney and Monique Edwards, where the Children remain and are doing well. To facilitate the agreed upon placement, Mother executed a power of attorney.

A Juvenile Court Magistrate was the first to try the case, and the Magistrate found that the Children were dependent and neglected, that Anthony G. had committed severe child abuse by beating Antoine, and that Mother committed severe child abuse by failing to provide medical care for Antoine until the next day.

Mother and Anthony G. filed a petition for rehearing by the juvenile court judge. Following an evidentiary hearing on August 8, 2016, the juvenile court judge entered an order finding the Children were dependent and neglected and victims of severe child abuse by Mother and Anthony G. In addition to finding that Mother committed severe child abuse by failing to provide medical care, the juvenile court found that Mother committed severe child abuse by failing to protect Antoine from Anthony G.'s abuse.

Both Mother and Anthony G. appealed that decision to the Shelby County Circuit Court. The circuit court heard the matter on February 16, 2017, and signed an order on July 27, 2017 ("the Final Order"), making the same findings as the juvenile court judge. Unfortunately, the Circuit Court Clerk filed the Final Order in the wrong case file and, to compound the error, did not send notice of the filing to the parties or counsel of record in this case. Consequently, none of the parties or their counsel received notice of the filing of the Final Order. The error was not discovered until September 20, 2017, and counsel for the parties did not receive a copy of the Final Order until September 29, 2017, which was more than thirty days following the entry of the order in the wrong case file.

On October 18, 2017, Mother filed a motion styled as a "Rule 60.02 Motion for Relief from Judgment Due to Clerical Error." Mother asserted that the Clerk's mistake prejudiced her by eliminating her "opportunity for post-judgment relief and appeals." Accordingly, Mother requested the circuit court enter "an Order indicating that the [Final] Order . . . was actually entered . . . on September 20, 2017." The trial court found that Mother was entitled to Rule 60 relief and ordered the record to be corrected "to reflect that the [Final] Order was entered on September 20, 2017." The circuit court's obvious intent was to grant Mother Rule 60 relief in order to perfect an appeal. However, and for reasons unexplained by this record, the order granting the Rule 60 relief was not entered until November 17, 2017, which was, again, more than thirty days late.

On December 13, 2017, Mother filed her notice of appeal. Anthony G. did not file a notice of appeal; thus, the circuit court's judgment against him is final.

Mother raises two issues on appeal: (1) whether the trial court erred by finding the evidence clearly and convincingly proved that she knowingly failed to protect Antoine;

- 4 -

and (2) whether the trial court erred by holding Mother's failure to seek medical attention constituted a statutory basis for severe child abuse.[7]

For its part, the Department contends this court lacks subject-matter jurisdiction because Mother failed to timely file her notice of appeal.

### STANDARD OF REVIEW

The fact that a parent, guardian or person has engaged in severe child abuse must be established by clear and convincing evidence. *See In re H.L.F.,* 297 S.W.3d 223, 233 (Tenn. Ct. App. 2009) (citing *State, Dep't of Children's Servs. v. M.S.,* No. M2003-01670-COA-R3-CV, 2005 WL 549141, at *10 (Tenn. Ct. App. Mar. 8, 2005) (holding that the clear and convincing standard applies to allegations of severe child abuse due to the consequences of such a finding)). Clear and convincing evidence must eliminate any "serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Valentine,* 79 S.W.3d 539, 546 (Tenn. 2002). "The evidence should produce a firm belief or conviction as to the truth of the allegations sought to be established." *In re H.L.F.,* 297 S.W.3d at 233 (citing *In re M.L.P.,* 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007); *In re Giorgianna H.,* 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006)). "In contrast to the preponderance of the evidence standard, clear and convincing evidence should demonstrate that the truth of the facts asserted is 'highly probable' as opposed to merely 'more probable than not.'" *Id.* (quoting *In re M.A.R.,* 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005)).

"This court reviews the trial court's findings of fact de novo on the record accompanied by a presumption of correctness, 'unless the preponderance of the evidence is otherwise.'" *Id.* (quoting Tenn. R. App. P. 13(d)). "If some of the trial court's factual findings are based on its determinations of the credibility of the witnesses, this court will afford great weight to those credibility determinations, and will not reverse such determinations absent clear evidence to the contrary." *Id.*

Whether the ultimate issue of severe child abuse has been established by clear and convincing evidence is a question of law, which we review de novo with no presumption of correctness. *Id.* To the extent the trial court made findings of fact in support of the ultimate issues, we review the factual findings in accordance with Tennessee Rule of Appellate Procedure 13(d): de novo with a presumption of correctness, unless the

---

[7] Mother does not appeal the court's finding of dependency and neglect, and Ameryiah is not the subject of this appeal. Anthony G. does not appeal the findings as to him and is not a party to this appeal.

evidence preponderates otherwise. *Id.* (citing *In re A.T.P.,* No. M2006-02697-COA-R3-JV, 2008 WL 115538, at *4 (Tenn. Ct. App. Jan. 10, 2008)).

## ANALYSIS

### I.     SUBJECT MATTER JURISDICTION

Under Tennessee Rule of Appellate Procedure 4(a), a notice of appeal must be filed "within 30 days after the date of entry of the judgment appealed from." Courts cannot extend the time limit for filing the notice of appeal. *Muesing v. Ferdowsi*, No. 01-A-019005-CV-00156, 1991 WL 20403, at *3 (Tenn. Ct. App. Feb. 21, 1991). But courts may enable a party to file a timely notice of appeal by granting postjudgment relief under Tennessee Rule of Civil Procedure 60.02.  Rule 60.02(1) permits courts to "provide relief when a party has been prejudiced by [the error of] a trial court clerk." *Id.* (citing *Jerkins v. McKinney,* 533 S.W.2d 275, 281 (Tenn. 1976); *Grantham v. Tennessee State Bd. of Equalization,* 794 S.W.2d 751, 752 (Tenn. Ct. App. 1990); *Tate v. County of Monroe,* 578 S.W.2d 642, 644 (Tenn. Ct. App. 1978)). "When such relief is granted, it usually takes the form of vacating the original final judgment and then re-entering it, thus causing the thirty[-]day period within which to file a notice of appeal to begin to run again." *Jefferson v. Pneumo Servs. Corp.*, 699 S.W.2d 181, 184–85 (Tenn. Ct. App. 1985).

It is undisputed that the parties and their counsel were not notified until September 20, 2017, of the entry of the Final Order in the wrong case file on July 27, 2017. Accordingly, without relief from the trial court, the Clerk's error prevented Mother from filing a timely appeal. To remedy the Clerk's error, Mother sought postjudgment relief in the form of a Rule 60.02 motion. The record reveals, albeit by implication, the trial court's intention to grant Mother the relief necessary to afford her the opportunity to file a timely notice of appeal. *See Morgan Keegan & Co., Inc. v. Smythe*, 401 S.W.3d 595, 608 (Tenn. 2013) ("Court orders and judgments, like other documents, often speak as clearly through implication as they do through express statements."). However, the "corrected" Final Order, which stated that the date of entry of the Final Order should be September 20, 2017, was not entered until November 17, 2017. As a consequence, the delayed entry of the corrected order once again precluded Mother from filing a timely notice of appeal absent another request for postjudgment relief.

Being certain that the trial court would again grant the intended relief, and because "[n]o useful purpose will be served by vacating the order and remanding the case solely for the entry of a[n] order granting post-judgment relief," *Muesing*, 1991 WL 20403, at *5 n.5, we will consider this case as if the trial court had re-entered the Final Order on November 17, 2017, *see id.* (considering the case as if the trial court had re-entered its order to enable the party to file a timely notice of appeal "[i]n order to reach the merits of [the] appeal without further delay"); *see also* Tenn. R. App. P. 36(b) ("When necessary to

- 6 -

do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). Therefore, we have jurisdiction to hear this appeal.

## II. SEVERE CHILD ABUSE

The trial court principally relied on the testimony of Dr. Lakin, Alisha Fondren, and Mother's cousin, Ms. Edwards, to conclude that Mother subjected Antoine to severe child abuse by failing to protect him from Anthony G. and failing to timely seek medical attention for Antoine after he was assaulted. The court acknowledged that Mother informed Dr. Lakin and Ms. Fondren that Anthony G. prevented her from intervening on the night of the beating and that Mother did not notice Antoine's injuries until the next morning; however, the court noted Dr. Lakin's testimony that Antoine would have been in considerable pain and likely would not have gone to sleep easily.

The court also found credible Ms. Edwards's testimony that Mother contacted Ms. Edwards on the evening of the beating and requested that Ms. Edwards bring milk for her newborn, Ameryiah, but Mother did not tell Ms. Edwards about Anthony G.'s assault of Antoine or the screams she heard from the other room. Further, the court relied on Ms. Edwards's testimony that she had previously and recently provided a safe home for Mother and Antoine because of Ms. Edwards's concerns for their safety, but Mother stayed with Ms. Edwards for less than one day and returned to live with Anthony G. with Antoine in tow. The trial court also relied on Ms. Edwards's testimony regarding Antoine's condition, bruises, and apparent injuries the morning after the assault and her testimony that Mother had not taken Antoine to receive medical attention, even though Anthony G. was not present to stop her. The court noted that the reason Antoine received medical attention was that Ms. Edwards insisted upon it. Based on these and other facts, the trial court concluded that Mother committed severe child abuse by: (1) failing to protect Antoine from Anthony's abuse; and (2) failing to provide medical care for Antoine until the next morning.

### A. Failure to Protect

Tennessee Code Annotated § 37-1-102(b)(27) provides four definitions for "severe child abuse." While the trial court did not identify which definition supported its conclusion, the Department contends the definition in subsection (A)(i) applies. This subsection defines severe child abuse as "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death." *Id.* The Department maintains that Mother's conduct meets the definition under (A)(i) because Mother continued to allow herself and her

children to live in Anthony G.'s home—despite his history of violence—and she failed to intervene while the abuse occurred.

Mother contends the trial court failed to make any finding that Mother knew the abuse would occur and ignored the evidence that Anthony G. prevented her from intervening in the abuse. Mother also argues that the failure to provide medical care does not constitute "severe child abuse" under subsection (A)(i) unless it results in, causes, or was likely to cause serious injury or death.

"Parents have a duty to provide, and children have a corresponding right to be provided with, a safe environment, free from abuse and neglect." *In re H.L.F.*, 297 S.W.3d at 235 (quoting *In re R.C.P.,* No. M2003-01143-COA-R3-PT, 2004 WL 1567122, at *6 (Tenn. Ct. App. July 13, 2004)). "A parent who is present when a child is abused but who fails to intervene to protect the child has knowingly . . . failed to protect the child from, abuse." *Id.* at 236. Knowledge of abuse may also be imputed to a parent "when . . . she has actual knowledge of the relevant facts and circumstances or when . . . she is either in deliberate ignorance of or in reckless disregard of the information that has been presented to . . . her." *Id.* (quoting *In re R.C.P.,* 2004 WL 1567122, at *7).

It is undisputed that Mother did nothing to protect Antoine on the evening of January 9, even though she was in the next room and heard Antoine screaming. Mother claims she "attempted" to intervene by entering the room while Anthony G. was physically assaulting Antoine and left when Anthony G. threatened to harm her. Admittedly, if Mother had intervened, she might not have been successful, and she might have been beaten as well; nevertheless, Mother had an affirmative duty to do something because she was present and knew the assault was happening.[8] Therefore, the record clearly and convincingly proves that Mother knowingly failed to protect the child from abuse. *See In re H.L.F.*, 297 S.W.3d at 236.

The record also contains compelling evidence which clearly proves that Mother had actual knowledge of the relevant facts and circumstances, which she either deliberately ignored or acted in reckless disregard of the information. For one, Ms. Edwards was so concerned for Mother's welfare and the welfare of the Children that she removed Mother and the Children from Anthony G.'s home, took them to her home,

---

[8] While we find significant the fact that Mother had the ability to contact Ms. Edwards on the evening of the assault, the record is unclear as to whether Mother's message to Ms. Edwards occurred before or after the assault. Moreover, Mother's only way of contacting Ms. Edwards was over the internet, and it is unclear whether Mother had to go next door to use the internet.

and informed Mother that she and the Children could stay with Ms. Edwards as long as Mother desired. Despite Ms. Edwards's concern for their safety and welfare, and the opportunity for Mother and the Children to stay in a safe environment away from Anthony G., Mother promptly left her cousin's home and returned to the home of Anthony G. with the Children in tow. Accordingly, the Department proved by clear and convincing evidence that Mother exposed the Children to a known threat. *See id.*

Based on the foregoing, the evidence clearly and convincingly established that Mother failed to protect Antoine from a known threat, Anthony G. Accordingly, we affirm the finding that Mother committed severe child abuse on this ground.

### B. Failure to Obtain Medical Care

Mother's second issue is that the trial court erred by finding she subjected Antoine to severe child abuse by failing to seek medical attention until the next morning.

Tennessee Code Annotated § 37-1-102(b)(27) does not include failing to seek medical care in its definition of severe child abuse. *Cf.* Tenn. Code Ann. § 37-1-102(b)(13)(D) (defining a "dependent and neglected child" as, *inter alia*, one "[w]hose parent, guardian or custodian neglects or refuses to provide necessary medical, surgical, institutional or hospital care for such child"). That said, our courts have found a parent's failure to seek medical attention may constitute severe child abuse.

For example, we have found a parent's failure to seek medical attention may support a finding of severe child abuse under the definition in Tennessee Code Annotated § 37-1-102(b)(27)(B), provided there is testimony from "qualified experts" that the abuse or neglect "caused or will reasonably be expected to produce severe psychosis, severe neurotic disorder, severe depression, severe developmental delay or intellectual disability, or severe impairment of the child's ability to function adequately in the child's environment." *See Nash-Putnam v. McCloud*, No. 01-A-01-9407-CV00348, 1995 WL 1692, at *1–2 (Tenn. Ct. App. Jan. 4, 1995) (affirming finding of severe child abuse under subsection (B) and noting that "the child's mother took no action to provide medical attention for the injuries or to prevent further abuse"), *aff'd*, 921 S.W.2d 170 (Tenn. 1996); *see also In re C.M.*, No. M2014-02571-COA-R3-JV, 2015 WL 9311287, at *25–26 (Tenn. Ct. App. Dec. 18, 2015). There was no such testimony in this case.

Conversely, in *In re Gabriella D.*, we affirmed the finding that a mother committed severe child abuse under Tennessee Code Annotated § 37-1-102(b)(27)(A) and (B) when the record showed that the mother noticed her baby was not growing three months before he was admitted to the hospital. No. E2016-00139-COA-R3-PT, 2016 WL 6997816, at *16 (Tenn. Ct. App. Nov. 30, 2016), *rev'd on other grounds*, 531 S.W.3d 662 (Tenn. 2017). The mother did not seek medical attention because she was afraid her

children would be removed from her care. *Id*. There was also evidence that the child's malnutrition "was likely to cause serious bodily injury or death." *Id*.

Likewise, in *In re Adriana L.*, the child's medical record stated that "[t]he delay in seeking medical attention put [the] child at extreme risk of infection and death" and there was evidence that the mother knew the father abused the child on prior occasions. No. M2013-00646-COA-R3-PT, 2013 WL 5434629, at *5–6 (Tenn. Ct. App. Sept. 25, 2013); *see also In re Derrick J.*, No. E2015-01507-COA-R3-PT, 2016 WL 3752013, at *15 (Tenn. Ct. App. July 8, 2016) (affirming trial court's finding that a father knowingly failed to protect his son from severe child abuse when the child's treating physician testified that, "left untreated, the burn posed a serious risk for infection and scarring"); *see also, e.g.*, *In re Caleb J.B.W.*, No. E2009-01996-COA-R3-PT, 2010 WL 2787848, at *7 (Tenn. Ct. App. July 14, 2010) (affirming trial court's finding of severe child abuse when "it was apparent to [m]other that the [c]hild had been abused, yet she continued to leave her son in Mr. Lee's care *and* neglected to obtain medical treatment for him when she had the opportunity to do so" (emphasis added)).

On the other hand, in *Tennessee Department of Children's Services v. H.A.C.*, we reversed the trial court's determination that a mother's failure to seek medical attention constituted severe child abuse under Tennessee Code Annotated § 37-1-102(b)(21)(A). No. M2008-01741-COA-R3-JV, 2009 WL 837709, at *2–4 (Tenn. Ct. App. Mar. 26, 2009). In *H.A.C.*, the child suffered non-accidental trauma, resulting in a broken femur and two broken ribs. *Id.* at *1. The rib fractures were at least nine days old by the time the mother took the child to the hospital. *Id*. The father admitted to "picking up the child and squeezing him around the chest and back while frustrated." *Id*. While this court found the mother's failure to immediately seek medical attention was "evidence suggesting that Mother may have failed to protect the child from Father's abuse," we recognized that "reasonable minds may differ concerning whether Mother should have taken affirmative action" at the time. *Id*. at *4. We reasoned that the record did not establish that the child's ribs were fractured on that occasion or that the child's cries established the mother knew about the injury. *Id*. Thus, we held that the evidence did "not clearly and convincingly establish that Mother knowingly failed to protect the child by not immediately seeking medical care for the child or by not reporting this event to medical providers or the authorities." *Id*.

Dr. Lakin testified that Antoine's injuries would have caused severe pain and that Antoine likely would not have slept easily; however, there was no evidence that the failure to seek medical attention until the next day exposed Antoine to infection or other medical complications. While it is very troubling that Mother did not seek medical attention as promptly as she could have, the evidence falls short of establishing the type of circumstances we have previously found to support a finding of severe child abuse for a delay in seeking medical attention.

Although a parent's failure to seek medical attention provides grounds for a finding of dependency and neglect under Tennessee Code Annotated § 37-1-102(13)(D), the finding of severe child abuse under Tennessee Code Annotated § 37-1-102(b)(27)(A)(i) requires a knowing omission that causes or is likely to cause serious bodily injury.

Because the evidence in this record does not clearly and convincingly prove that Mother's failure to seek medical attention for Antoine until the next day constituted severe child abuse under the statutorily prescribed definition, we reverse the trial court's determination on this ground.

## IN CONCLUSION

The judgment of the trial court is affirmed as to the findings of dependency and neglect and severe child abuse by Mother for failure to protect her children, and this matter is remanded for entry of judgment consistent with this opinion. Costs of appeal are assessed against the appellant, Katrina J.

_____
FRANK G. CLEMENT JR., P.J., M.S.

- 11 -